UNITED STATES FIDELITY & GUARANTY CO. v. DAWSON PRODUCE CO.

No. 32715.    March 23, 1948.

Rehearing Denied Sept. 28, 1948.

*197 P. 2d 978.*

Howe Capitol Addition hereafter known as green-house shall be 75% to First Party and 25% to Second Party, further, division of production from outside ground shall be 33⅓% First Party, 66⅔% Second Party.

"The First Party to furnish free-of-cost to Second Party (heat, light and power and other maintenance items). The First Party agrees to pay 75% and Second Party 25% of all labor, seed and supply items used in selling and growing of vegetables from under-glass.

"The First Party agrees to pay 33-⅓%, Second Party 66⅔% of all labor, seed and supply items used in growing and selling vegetables produced on outside ground. Second Party to have charge of both growing and selling.

"Second Parties to furnish their entire time growing or selling their production.

"Term of said contract shall be for one year from January 1st, 1933, to January 1st, 1934, and subject to cancellation by mutual consent of all parties."

On January 6, 1933, while Prama Singhrs was in the main office of the company transacting business under the contract, he fell down an open shaft sustaining personal injuries. He sued the company to recover damages for such injuries. The United States Fidelity & Guaranty Company had, in June, 1932, issued to the Dawson Produce Company a Workmen's Compensation and Employer's Liability insurance policy, which was in force at the time of said accident. The plaintiff notified said guaranty company of such suit and demanded that it defend the same on the theory that Singhrs was its employee and was covered by the insurance policy. The guaranty company refused to defend the action on the ground that Singhrs was not an employee of the Dawson Produce Company, and that hence it was not liable under its policy. The Dawson Produce Company settled with Singhrs and permitted judgment against it to be rendered in said action for $2,200, and paid the judgment. Thereafter the Daw-

Rainey, Flynn, Green & Anderson, of Oklahoma City, for plaintiff in error.

Looney, Watts, Ross, Looney & Smith, of Oklahoma City, for defendant in error.

HURST, C.J. On December 17, 1932, the plaintiff Dawson Produce Company entered into a written contract with Prama Singhrs and J. C. Singhrs, designated "share agreement," providing as follows:

"The Dawson Produce Company, a Corporation, hereafter known as the Party-of-the-first-part and Parama Singhrs, J. C. Singhrs, hereafter known as the Party-of-the-Second-part do hereby agree that the division of all production under glass from Block 13

son Produce Company commenced this action against the guaranty company to recover $2,805.85, representing the amount of the judgment and its attorney fees and expenses in defending said action. The court sustained plaintiff's demurrer to defendant's third amended answer and entered judgment for the plaintiff. The defendant appealed, and the judgment was reversed with directions, this court holding that the guaranty company was not precluded from defending this action on the theory that Singhrs was not an employee of Dawson Produce Company, and hence not covered by its indemnity policy, by the judgment in the first case determining that Singhrs was an employee, since it was not necessary for the court in that action to determine that Singhrs was an employee. 180 Okla. 119, 68 P. 2d 105. The only issue tried below after the remand was whether Singhrs was an employee of Dawson Produce Company. The court tried the case without a jury and found this issue in favor of the plaintiff, and rendered judgment accordingly, from which judgment defendant appeals.

The issues were drawn by defendant's fifth amended answer and plaintiff's reply.

In its fifth amended answer, defendant admitted execution of the policy of insurance and the rendition of the judgment alleged in the petition; denied that it is bound by that judgment; alleged that Prama Singhrs did not allege in his petition that he was an employee of Dawson Produce Company, but rather alleged that he and the plaintiff were jointly interested in the business as appears from the petition in case No. 79,866, which was attached; denied that Singhrs was an employee of Dawson Produce Company; alleged that Singhrs was working at the time of his injury which plaintiff under the "share agreement" above set out; alleged that when Singhrs instituted his action against the plaintiff, the defendant, when investigating the matter and the relationship between Singhrs and the plaintiff, was advised by the president of Dawson Produce Company that the terms of employment existing between plaintiff and Singhrs on the date of his injury were embraced in said "share agreement", and that defendant relied upon said representations and denied liability under the policy and altered its position to its detriment, in that plaintiff herein settled with Singhrs for $2,200 and incurred expenses of $805 in this connection; alleged that this action resulted from defendant's denial of liability by reason of the representations and reliance upon them of plaintiff's statements of the relationship existing between plaintiff and Singhrs, and that therefore the plaintiff is now estopped to assert that the said share agreement between it and Singhrs was not the contract of employment between plaintiff and Singhrs at the time of Singhrs' injury.

Plaintiff filed a reply denying all allegations in the fifth amended answer inconsistent with plaintiff's petition, and further alleged that prior to the accident and injuries sustained by Singhrs the contract referred to in defendant's fifth amended answer was rescinded and canceled by an executed oral agreement and that at the time of the accident Singhrs was performing services for plaintiff in the capacity of an employee.

The defendant first contends that the burden is on the plaintiff to show that at the time of the accident Singhrs was its employee so as to bring his accident, injuries and claims within the provisions of the policy. Plaintiff does not question this contention, but insists that it has sustained the burden of proof incumbent upon it, and that the trial court's judgment that Singhrs, being subject to plaintiff's control, was its employee, is supported by competent evidence and should be affirmed. Defendant, on the other hand, contends that Singhrs was not an employee of the plaintiff, but argues that the re-

lationship between them was that of joint adventurers.

The issue thus made by the pleadings and presented here on appeal is simply this: Was Prama Singhrs, at the time of the accident, an employee of Dawson Produce Company and as such covered by the policy of insurance issued by defendant?

1. Plaintiff does not contend that the original "share agreement" did not create a joint adventure, but pleaded and contends that the same was rescinded and canceled by an executed oral agreement, and urges that the test as to whether Singhrs was its employee is whether he was subject to the control that a master exercises over his servant, and that the evidence is that plaintiff had a right to and did control Singhrs through its president and managing officer.

The evidence supporting the allegations that the written agreement had been rescinded and canceled is in effect (1) that it was originally contemplated by plaintiff to contract with three Singhrs, but that one of the Singhrs did not arrive from California so that the contract was made with two Singhrs, with the obligations and benefits under the contract to the two parties of the second part, instead of the three men as originally contemplated, and (2) that in the growing operation practically the entire control was exercised by plaintiff.

The written contract was made between plaintiff and two Singhrs. No reference therein is made to any third Singhrs. Mr. Dawson testified that the payments and obligations between the parties remained as set out in the "share agreement" and that Singhrs continued on with plaintiff under the "share agreement" after the time of injury. The records of plaintiff indicate that Prama Singhrs received advances under the contract even during the time he was confined to his bed for the injuries he sustained. Mr. Dawson testified that the written agreement was made with the two Singhrs instead of the three as originally contemplated; that he did not put either Prama Singhrs or J. C. Singhrs upon any weekly pay roll, but expected them to go ahead and perform their work and furnish such supplies as they agreed to furnish under the agreement. It is established by the testimony of Mr. Dawson that, regardless of any subsequent agreement or change in the original agreement by practice going to the question of control, there was an actual division of the production of the greenhouse in conformity with the provisions of the "share agreement".

Plaintiff points to evidence establishing that the Dawson Produce Company had complete control over almost all of the details in connection with the production of vegetables from the greenhouse and surrounding grounds, and urges that the right to such control, and exercising such control, created a master-servant relationship. Many cases are cited, showing the distinction between a servant and an independent contractor to be found in the right to general control by the master. We do not think these cases are any authority to establish a test by which to distinguish between a joint adventurer and a servant for the reason that control in a joint adventure may be in either party to any extent or shared in any manner by agreement.

The original "share agreement" contained this provision: "Second party to have charge of both growing and selling." Under the evidence, it appears that much of the control of the growing operation was actually exercised by plaintiff, but the evidence shows, too, that under the agreement Dawson Produce Company had a first right to buy the Singhrs share of the production and, if there remained any surplus above the needs of the plaintiff, there remained in the Singhrs a right to control and a duty to dispose of the surplus, including both Dawson's share and the Singhrs' share, on the

open market for the protection of both parties to the contract.

Thus it appears that both parties to the original contract assumed that they had a right of mutual control over the subject matter of growing and selling the vegetables, which was the extent of the activities of the business, so as to contract in regard to fixing that duty and responsibility. The right of mutual control over the subject matter of the enterprise is essential to create a joint adventure. 30 Am. Jur. 682. But the rights of the parties with respect to management and control of the joint venture may be fixed by agreement. 30 Am. Jur. 693. Experience has shown this to be a usual procedure. See Keisel v. Bredick, 192 Wash. 665, 74 P. 2d 473; Bedwell Coal Co. v. State Industrial Commission, 157 Okla. 227, 11 P. 2d 527; Sand Springs Home v. Dail, 187 Okla. 431, 103 P. 2d 524; Bilbig Construction Co. v. Whitham, 194 Okla. 460, 152 P. 2d 916. The right of mutual control, initially existing, could, by agreement, be placed wholly in the hands of one of the joint adventurers, and could, by subsequent agreement or practice, be changed so as to shift the control over the management of the enterprise in any fashion in accordance with the agreement without changing the relationship of the parties.

The evidence shows that the new, executed, oral contract, pleaded by plaintiff, was identical with the written "share agreement", with the exception that there had been a modification by operation thereunder so as to put control almost completely in the hands of the plaintiff. The right to a share of the production was not changed nor were the responsibilities upon the Singhrs to furnish the stipulated percentages of labor, seed and supplies as set out in the "share agreement" changed. It is obvious that the stipulated share of the crop to the Singhrs is more than payment for their labor for they agreed to furnish, not their labor alone, but "to pay 25% of all labor, seed and supplies used in growing and selling vegetables from underglass, and 66⅔% of all labor, seeds and supplies used in growing and selling vegetables produced on outside ground." The obligation to pay a stipulated percentage of the cost of all labor, seed and supplies cannot be understood to be the obligation of a hired hand. The conclusion is inescapable that the relationship between the parties is a joint adventure and the fixing of the right of control and management of the joint adventure is such a thing as may be and ordinarily is done by agreement.

Plaintiff cites United States v. Wholesale Oil Co., 154 F. 2d 745, in support of its contention that the agreement is not that of joint adventure and the right of control creates a master-servant relationship. In that case the right of control was not applied as a test to determine whether the relationship was that of a joint adventure or master and servant relationship, but after it was decided that it was not a joint adventure, that test was used to determine whether one party was a servant or independent contractor. The court held that a joint adventure was not created for the following reasons:

"More is required than a community of interest in the fruits of the venture. There must be such interest in the business and also in the management of the business. There must also be joint liability. None of these elements is present here. The company owned all of the assets. It owned the sites, the stations, and all of the merchandise. At no time, either during the operation of the business or at the termination of the contract, did the operator have or acquire a vested interest in any of the property used in the business. . . . Neither did the operator have the right to exercise his independent judgment in the management and operation of the business. . . . Neither did he assume any liability for the debts of the so-called partnership or joint adventure. He did not become liable for merchandise accounts or for other obligations incurred by the company. The only liability he had

was that he shared the net operating losses, if any. But sharing in the profits and losses alone of a business is not sufficient by itself to create a partnership relation. . . ."

We agree, as will be recognized from what we have said, that there must be a right to mutual control of the management of the enterprise to constitute a joint adventure. We do not understand that the agreement need state that there must be joint liability even in a partnership. If the relationship exists between the parties the liabilities of the relationship attaches. Of joint adventures, we said in Bedwell Coal Co. v. State Industrial Commission, supra, at page 532:

"Joint adventures being special combinations of two or more persons where, in some specific venture, a profit is jointly sought without any actual partnership designation, there is no reason why the parties by special agreement could not limit their respective profits and provide by their specific contract which particular part of the expenses each party should bear before participating in any profits."

Whether a single partner or adventurer owns all of the property used in the partnership or joint adventure does not seem conclusive in determining whether either of these relationships exist since it is well recognized that the better rule is that joint ownership of the property used in carrying on the business is not necessary. Rowley, Modern Law of Partnership. vol. 1, p. 114. If the character of the property was an issue the agreement and the conduct of the parties must be examined to determine whether it became firm property or remained the property of one of the partners. Rowley, Modern Law of Partnership, vol. 1, p. 313. The use only of property may be put in a partnership or joint adventure.

Plaintiff urges that when a written contract has been modified by the practice under it, the relationship of the parties becomes a question of fact for the jury. Chicago, R.I. & P. Ry. Co. v. Bennett, 36 Okla. 358, 128 P. 705, is cited. In that case, we recognized the exception to the rule that where but one inference can be drawn from the evidence, the question is one for the court. It is our view that the instant case falls under the exception, rather than the rule, since the only modification of the "share agreement" is the change in the right to manage which does not control in distinguishing between a joint adventurer and a servant.

2. The plaintiff contends that even if the parties were joint adventurers the trial court could have rendered no other judgment than it did since "the parties construed the insurance sued upon to include Singhrs as an employee of plaintiff by charging plaintiff premiums, which it paid, based upon such relationship, and defendant is bound by its construction of the policy."

a. Plaintiff urges first that it proved that Dawson submitted the share agreement and facts surrounding the employment of Singhrs to defendant and was assured that Singhrs was covered. In this connection the testimony of Mr. Dawson was that at about the time of making the contract with Singhrs, he gave Mr. Clymer, insurance broker in the office of Ancel Earp, the general agent for the U. S. F. & G., copies of the share agreement and asked him "whether or not they were going to operate under that agreement as far as the company was concerned." Dawson testified that upon his return in a few days Clymer "said it was insured." The policy in the instant action contains a similar provision to the one considered in United States F. & G. Co. v. Thompson, 192 Okla. 364, 136 P. 2d 875, wherein we held that the verbal statement of the insurer's agent when the policy was issued did not waive or change the terms and conditions of the automobile liability policy provision that terms could be waived or changed only by endorsement signed by the executive officer of the insurer. There is nothing in the record to indicate

that the terms of the policy were extended by a proper authority to include other than employees. Furthermore, plaintiff pleaded in its reply that the "share agreement" was rescinded and canceled by an executed oral agreement, not that the construction had been made by the proper officials of the defendant company.

b. Plaintiff's final contention is that the defendant calculated the final premium upon the pay roll of plaintiff and included therein the salary paid Singhrs, upon which pay roll the final premium adjustment was paid. It must be kept in mind that this type of insurance is bought and an estimated premium is paid at the outset, based upon the estimated pay roll within the various classifications of work. It is contemplated that workers within the various classifications might be changed or new employees added and be covered under the policy. At the end of the term of the policy, an audit is made to determine the cost of the actual coverage. The difference between the actual premium and the previously paid estimated premium is either paid by the insured or refunded by the insurer as the case may be.

Plaintiff cites four cases in support of its last contention. The two from other jurisdictions concern workmen's compensation policies which were intended from the inception to include firemen in one case and policemen in the other. Premiums were paid based upon the pay rolls including the salaries paid those employees who were held to be within the policy coverage. Both cases are very much like our case of Maryland Casualty Co. v. Whitt, 167 Okla. 261, 29 P. 2d 65, cited by plaintiff. The other Oklahoma case cited is Brooks v. A. A. Davis, 124 Okla. 140, 254 P. 66. The distinction is that, in the Whitt case, the policemen had been listed as employees of the city for a number of years in policies issued by the insurer in that case, and that they had accepted premiums based upon the salary of the city including the pay roll of the police department. The decision in that case is based upon the view that it was the intention of the parties at the time the contract was executed that policemen were to be paid compensation in the event of accidental injury and not that the acceptance of the premium based upon the salary of the policemen was controlling. In the case before us, there were no dealings at all between the plaintiff and Singhrs at the time the policy was issued on June 1, 1932. Subsequently, on December 17, 1932, the "share agreement" was made by the parties to become effective on January 1, 1933. The injury to Singhrs occurred on January 6, 1933.

In the Brooks case, the question of estoppel was raised, but it was held that, in that action before the State Industrial Commission, estoppel need not be pleaded with the particularity required in a law court. The instant action is one of legal cognizance and estoppel is not particularly pleaded nor are sufficient facts pleaded to enable the plaintiff to be entitled to the benefits of the law of estoppel. In Southwestern Surety Insurance Co. v. Holt, 88 Okla. 281, 213 P. 80, we stated the rule:

"In order to create an estoppel by the acceptance of benefits, it is essential that the party against whom the estoppel is claimed should have acted with knowledge of his rights; also that the party claiming the estoppel was without knowledge of the facts on which he bases his claim of estoppel that he was influenced by and relied on the conduct of the person sought to be estopped and that he changed his position in reliance thereon to his injury."

It is clear, from the testimony of Mr. Dawson, and the admission in defendant's answer, that from the time of the investigation of the accident to the time of the final denial of liability and refusal to defend on the part of the defendant, after the suit by Singhrs was filed on June 2, 1933, the written "share agreement" was submitted to

the insurance company as controlling the relationship of the parties thereto. The position of the insurance company has been from the first report of the accident consistent in denial of liability based upon the written "share agreement" furnished to it by the plaintiff. We cannot say that, in the face of this consistent position, the evidence concerning the audit of the pay roll and the calculation of the final adjustment premium based upon the pay roll, including the payments and advances to Singhrs, shows a construction by the defendant to include Singhrs within the coverage of the policy as an employee and raises an estoppel against it. It seems that the only action of the defendant upon which it might be claimed that reliance was placed by the plaintiff and a change of position predicated would have been the reliance upon the statement of Clymer that Singhrs was covered and not upon the acceptance of the premium by the insurer, since such an acceptance was made after the accident and the payment of the claim and settlement by plaintiff was made after the repeated disclaimer at the time of the filing of the suit by Singhrs.

Reversed and remanded, with directions to vacate the judgment and enter judgment for defendant.

BAYLESS, WELCH, CORN, GIBSON, and LUTTRELL, JJ., concur. RILEY, J., dissents.

———

RILEY, J. (dissenting). Herein the judgment is reversed and the cause is remanded. While it is said in the opinion that estoppel was not pleaded, upon a remand of the case estoppel may be pleaded.

The petition of plaintiff may be amended to conform to the facts established, without objection, when the cause is remanded or the allegations of the petition may be considered as amended now. If under our rule so often announced, the petition of plain-

tiff is considered amended, it does appear, from undisputed evidence and from an exhibit, that the premium upon the indemnifying policy of insurance was paid by the indemnitee, Dawson Produce Company, both as to its liability under Workmen's Compensation Law and "1(b) . . . against loss by reason of liability imposed upon him (employer) **by law for damages . . .**", it is elementary that an award under the Workmen's Compensation Law is, irrespective of negligence, not damages, but a compensation for scheduled liability of industry as an incident of the wreckage of humanity employed. The action at bar is to recover an indemnity as contracted for damages for personal injuries sustained as a result of negligence adjudged against and paid by the indemnitee.

The majority opinion determines that the relation of the parties was that of joint adventurers. The co-adventurer of Dawson Produce Company was employed to labor and was injured as a result of Dawson Produce Company's negligence. Judgment was rendered therefor as against Dawson Produce Company. Dawson Produce Company was indemnified by United States Fidelity & Guaranty Company, insurer. The insurer was liable by application of the law of negligence. The insurer elected not to defend the action for damages against indemnitee, Dawson Produce Company, though called upon to do so. This court has held that as to a city's indemnifying policy of insurance, where a city paid out money because of injury to its employed policeman, the indemnitor must indemnify the indemnitee. If the policy of insurance had coverage, the same rule applies here. Insurer collected premiums based upon Dawson Produce Company's liability for injuries that might be sustained by co-adventurer of the indemnitee.

The rule that a policy of insurance will be construed strongly against the insurer applies. By the text of the policy, coverage is contracted. The con-

tractual relation should be liberally interpreted in favor of the indemnitee. As the insurer assumed a broad liability and failed to defend its indemnitee, and the indemnitee, as a result of judgment, paid its liability covered by the policy, the judgment against the indemnitor should be affirmed.

Rehearing Denied Sept. 28, 1948.