EDMONSTON et al. v. HOLDER et al.
EDMONSTON v. BROWN.

Nos. 33055, 33056.   Nov. 23, 1948.

As Modified on Denial of
Rehearing June 14, 1949.

Second Petition for Rehearing
Denied June 6, 1950.

*218 P. 2d 905.*

Paul Pinson, of Tulsa, for plaintiff in error Herbert A. Edmondston, d/b/a Oil States Construction Company.

Busby, Harrell & Trice, of Ada, and Felix A. Bodovitz, of Tulsa, for plaintiff in error J. A. Frates, Jr.

Wm. K. Powers, R. B. McDermott, and Hess Crossland, all of Tulsa, for defendants in error.

GIBSON, J. Though separately filed and briefed the above entitled causes were consolidated for the purpose of the oral argument and same are consolidated for the purpose of review.

Incidental to the construction by the United States of the pipe line from Texas to the eastern seaboard, known as the "Big Inch", there was created the War Emergency Pipelines, Inc., hereinafter referred to as W. E. P., which, as an agency of the Federal Government, was authorized to make contracts for the construction thereof. The W. E. P. requested bids for the construction of the pipe line on a "cost plus fixed fee" basis. Plaintiff in error Herbert A. Edmonston, then doing business as Oil States Construction Company, desiring to obtain a contract for construction of a section thereof, but realizing that he had neither sufficient

equipment, skilled personnel nor working capital to fulfill such a contract, entered into contracts with others to supply such deficiency, and it is the construction of such contracts that is involved herein.

Previous to bidding on the project Edmonston, on February 15, 1943, approached defendant in error Clyde H. Brown, who was experienced as a pipe line construction superintendent, but then retired, and by oral contract engaged his services, first, to make surveys and reports preliminary to bidding on the project and thereafter to act as superintendent of the construction in event contract was awarded and, as consideration for such service, agreed to pay said Brown a salary of $600 per month and expenses, beginning forthwith, and to pay the further sum of 1/10 of the fixed fee that would be provided in the contract with W. E. P. During the latter part of March, 1943, Edmonston was advised by W. E. P. that he had been awarded a contract to construct approximately 62 miles of the pipe line and that the usual form of contract would follow for his execution. On April 1, 1943, Edmonston entered into a written contract with defendant in error A. C. Holder, who was then actively engaged in the business of pipe line construction and had in his employ experienced personnel and welding and ditching equipment, under the terms of which the use of the entire personnel and equipment was acquired by Edmonston. Though not declared in the contract it was understood and agreed that Edmonston was to employ and pay the personnel for the services rendered and pay to Holder such rental for use of the equipment as was provided by the W. E. P. contract. The provision in the contract relating to the further consideration to which Holder became entitled is as follows:

"In consideration of such services, Second Party agrees to pay to First Party a sum equal to twenty per cent (20%) of any and all amount or amounts received by Second Party from the War Emergency Pipelines, Inc. as his fixed fee under the contract above referred to, said payments to be made to First Party as, if and when the same are received by Second Party from the War Emergency Pipelines, Inc."

On April 5, 1943, Edmonston entered into written contract with plaintiff in error Frates. Thereunder Frates, who was given control and supervision of the fiscal affairs involved in the execution of the contract, obligated himself to render such assistance as necessary to raise funds up to $75,000, if need be, to finance the project, and more if necessary. And, pertinent here, is the following provisions therein:

"It is understood and agreed that nothing in this contract or in the association of the parties hereto shall be construed to create or establish a partnership between the parties hereto, but this undertaking is expressly and solely limited to the purposes herein set forth. . . .

"First party agrees to pay to second party as consideration for services rendered by second party in accordance herewith, one-half of the net profits accruing under said contract as and when said profits accrue. It is further understood and agreed that there will be an amount of money specified in said contract which is on cost plus a fixed fee basis, from which shall be deducted twenty per cent (20%) to be paid to the welding contractor and ten per cent (10%) to be paid to the superintendent of construction, and the balance of said agreed amount in the contract as a profit item divided equally between the parties."

Thereafter, performance of the contract with W. E. P. was begun and prosecuted to completion and the work was accepted in the fall of 1943, and the fact of performance by said Brown and said Holder of their respective contractual obligations with Edmonston is not in question. Brown was paid in full his salary and personal expenses according to contract, but was paid no part of the fixed fee which Edmonston was entitled to receive under the W. E. P. contract. Holder was paid in full for rental of his equipment and the

sum of $2,800 as credit upon the amount of the fixed fee he was entitled to under his contract.

Such was the situation when, on April 16, 1945, these actions were instituted. Each action was tried upon issues made upon a second amended petition, but since the original and first amended petitions were introduced in evidence we state the material substance thereof.

In each of the original petitions it is alleged that the relationship between Edmonston and Frates, doing business as Oil States Construction Company, is that of a partnership, and that the relationship between the plaintiff and the partnership is one of joint adventure. The first amended petition makes the First National Bank & Trust Company additional defendant, avers that Edmonston and Frates had assigned to the bank the entire fixed fee provided in the W. E. P. contract, and prays judgment against the bank as well as the other defendants for plaintiff's portion thereof.

The second amended petitions filed in said actions, on March 5 and 6, 1946, respectively, plead the facts hereinbefore outlined and allege that said Edmonston and Frates, doing business as Oil States Construction Company, were partners at the time of execution of plaintiff's contract, and that, if not partners then, they became such thereafter and succeeded to the rights and obligations of Edmonston under the contract; that soon after April 1, 1943, Edmonston and Frates assigned to said bank all moneys and credits accrued and to accrue under the W. E. P. contract including the interest in the fixed fee owing to plaintiff under his contract; that plaintiff has superior right in the funds received or to be received to extent of the amount owing; and, in addition to intermediate equitable relief, judgment is sought against the defendants and each of them for that portion of the fixed fee owing to plaintiff under his contract. There is no allegation in either second amended peti-

tion that there existed between plaintiff and defendants a joint adventure nor is there alleged therein a state of facts from which the existence of such relation could properly be inferred, and none of the allegations of the original or first amended petition are made a part thereof.

For answer the defendant bank denied generally, except to extent allegations were admitted. It admitted the contract between W. E. P. and Oil States Construction Company and that the latter assigned to the bank the funds, moneys and credits due it under the contract. It avers that at time of the assignment and thereafter it was without knowledge of any claim of plaintiff in and to funds or money accruing to Oil States Construction Company thereunder; that the bank had extended credit to the company on the strength of the assignment; that on account thereof there was owing to the bank $35,242.07; and that the claim of plaintiff was junior and inferior to that of the bank upon any moneys to be received.

Defendants Edmonston and Oil States Construction Company, upon the one hand, and Frates upon the other, filed separate answers to the second amended petition in each of the actions. The import of the answers was the same. In each there is a general denial except to the extent of admissions made. The contract between W. E. P. and Edmonston, doing business as Oil States Construction Company, is admitted and, purporting to be a further admission, there appears therein the following:

"Defendants admit that the contract entered into between the plaintiff and these defendants was substantially as set forth in plaintiff's petition and that the same was entered into in good faith as a joint adventure and partnership and that by virtue of the terms and conditions of the said contract it was anticipated by these defendants and by the plaintiff that if and when the government agency, War Emergency Pipe Lines, Inc., had completely and fully reimbursed these defendants for all their cost and expenses and had paid

the full fee of nineteen (19c) cents per foot then the said fee as profits of the said enterprise were to be shared between 'the plaintiff and defendants as in the petition set forth."

Therein it is also alleged that, on the basis of proper accounting, plaintiff has been overpaid, and on cross-petition therein judgment is sought against plaintiff.

The causes were tried to the court without the intervention of a jury. In each action the issues were found in favor of the bank, judgment awarded accordingly and no appeal therefrom was taken. In each case the issues were found in favor of the plaintiff and against the defendants Edmonston and Frates. In each the court found, specifically, that Edmonston and Frates were partners, doing business in the name of Oil States Construction Company and were liable to the plaintiff as such. In cause 7333, being 33055 on appeal, plaintiff A. C. Holder was awarded judgment against said Edmonston and Frates as such partners in the sum of $9,138.55. In cause 7334, being 33056 on appeal, plaintiff Clyde H. Brown was awarded judgment against said Edmonston and Frates as such partners in the sum of $5,969.27. In each case the defendants individually and as partners prosecute the appeal and in each case there is filed a supersedeas bond.

The substance of the errors assigned on each appeal is that the judgment is contrary to both the law and the evidence. And the grounds urged in briefs of both plaintiffs in error are responsive to the following propositions appearing in brief filed by the attorney for plaintiff in error Herbert A. Edmonston, doing business as Oil States Construction Company:

"I. The trial court committed reversible error in refusing to find that a partnership existed between the plaintiff, Holder, and the defendant, Edmonston.

"II. This action was brought prematurely. In the course of the trial and upon discovery of the premature filing,

it was the duty of the trial court to dismiss plaintiff's action.

"III. A suit for an accounting between partners is one of equitable cognizance. The trial court erred in not finding the equities herein in favor of the defendant.

"IV. The trial Court's finding that a partnership existed between the defendants, Frates and Edmonston, is against the clear weight of the evidence."

The bases upon which proposition I is predicated are stated in the same brief as follows:

"An analysis of the pleadings (Frates' brief, pp. 11-17) discloses (1) that the plaintiff Holder pleads a partnership with the defendant Edmonston; (2) that the defendant admitted the partnership; and (3) that the proof conformed to these pleadings."

If either action had been tried upon the issues tendered by the original petition and defendant's answer as responsive thereto, there would be force in the first part of the proposition because pleadings in an action define the issues to be tried, and parties are bound by the allegations and admissions made therein, unless withdrawn or changed by amendment thereto, Templeman v. Walker, 175 Okla. 366, 52 P. 2d 737. Where, however, as here, the allegations in the original petition have been superseded by an amended petition that is complete in itself and not referring to the original petition, such allegations are not conclusive upon the plaintiff. Letcher v. Maloney, 70 Okla. 65, 172 P. 972. In such latter situation such allegations are but evidentiary as admissions against interest when introduced as evidence, as was done herein. Taylor v. Scott, 167 Okla. 588, .32 P. 2d 48. In the second amended petition upon which the cause was tried the plaintiff neither pleaded a joint adventure or partnership between himself and defendants nor sought relief that involved the existence thereof. And, in order for defendants to derive benefit on basis of the existence of a partnership, it is necessary that the

same be by them alleged and proved. Hawkins v. Mattes et al., 171 Okla. 186, 41 P. 2d 880. It is questionable whether defendants have alleged the existence of the partnership relied on. But, conceding for the purpose of the review that they have, it remains, as held in O. K. Boiler & Welding Co. et al. v. Minnetonka Lumber Co. et al., 103 Okla. 226, 229 P. 1045, that

"The status may be inferred from the purpose of the enterprise, the acts and conduct of the parties in relation to the engagement. In some cases the acts and conduct of the parties may speak above the expressed declarations as to the creation of the undertaking and its scope."

It is a fundamental rule that partnership rests on mutual consent and that the usual test of the existence of a partnership or joint adventure is the intent of the parties. Campbell v. Smith et al., 106 Okla. 26, 232 P. 844; Taylor v. Ferreo, 171 Okla. 79, 41 P. 2d 839.

We have carefully considered the evidence and conclude that other than the allegation of joint adventure made in plaintiff's original petition, which we hold to be of no force under the circumstances, there is no evidence that reasonably tends to prove the existence of a partnership or joint adventure between either of the plaintiffs and the defendants or either of them. And, further, that the conduct of the contracting parties at the time of entering into the contract and thereafter throughout its execution expressly negative the idea that such relation was designed or considered to exist. In substance, the contract with Brown provided merely that the latter should render a personal service for which he was entitled to receive a definite consideration, and that with Holder provided merely that the latter should furnish his personnel and equipment for a definite consideration. In neither case was the consideration or any part thereof dependent upon a profit to arise out of the enterprise. The only condition imposed was that the portion of the consideration payable out of the fixed fee

was not payable until same was realized. The mere fact that a portion of the consideration was a percentage of the fixed fee does not convert the contractual relation into a partnership or joint adventure, and there is nothing in Vilbig Const. Co. et al. v. Whitham, 194 Okla. 460, 152 P. 2d 916, and other cases, relied on by defendants, to the contrary.

Since the matters urge under propositions II and III are considered to arise out of the partnership which we hold not to exist, they require no further consideration.

Pertinent to the consideration of the matters urged under proposition IV are the following facts: The fixed fee under the W. E. P. contract was for a definite amount and the amount of the judgment in each case represented the portion thereof plaintiff was entitled to receive under the terms of his contract. At the time of his entry into contract with Edmonston, Frates was fully advised of the interests of Brown and Holder in the fixed fee. In the matter of financing the enterprise Frates, under terms of his contract, occupied an authoritative position. As a condition to loaning the money therefor the bank required the obligation therefor to be that of Frates as well as of Edmonston, and that the funds to accrue under the W. E. P. contract be assigned to the bank with right in the latter to apply same upon such obligations. Frates joined with Edmonston in assigning the W. E. P. contract to the bank. Such assignment carried to the bank the right to receive and apply the entire fixed fee to the indebtedness to the bank of Edmonston and Frates because the fact of the interest of Brown and Holder therein was not disclosed to the bank which was a purchaser for a value. Thereafter Frates and Edmonston continued, in like manner, to borrow money to be used not only on said enterprise but other enterprises as well, to the discharge of which loans said bank was entitled to apply the proceeds of said assignment. All of the funds owing under the W. E. P. contract have been

paid and the amount thereof remaining unexpended in hands of the bank is little, if any, in excess of the amount owing by Frates and Edmonston to the bank.

Counsel for plaintiffs in error argue at length their contention that no partnership existed between Frates and Edmonston and, in doing so, stress a construction of the written contract between them, quoted from above, as determinative thereof. And it is urged that without the existence of the partnership there exists no basis for the judgment, and that even though the evidence be held to establish individual liability on the part of both Edmonston and Frates, the judgment could not be sustained as one against them in view of the rule announced in Hassen et al. v. Rogers et al., 123 Okla. 265, 253 P. 72.

That both Edmonston and Frates became individually liable to the plaintiff is clear on authority of our holding in Clark v. Armstrong & Murphy, 180 Okla. 514, 72 P. 2d 362. We there held:

"A contract under which one party is to receive compensation for services out of a particular fund, if and when realized, and which has been performed by such party, gives him an equitable lien on the fund when created, in the hands of any one having notice of the contract."

And we therein held that one, with knowledge of such lien, acquiring such fund became liable for the debt secured thereby. That Edmonston and Frates appropriated the fixed fee to their own use, to the exclusion of plaintiffs' rights therein, there can be no question.

We hold that the question presented is whether the judgment herein against them as partners would be sustainable in event they, in fact, were not partners. The holding in Hassen v. Rogers, supra, and others relied on, is to the effect that where the obligation is that of a partnership it is error to recover a judgment thereon against a member of the partnership sued alone in his individual capacity. It is argued therefrom that where the liability is individual a judgment against the individuals as partners would be likewise prejudicially erroneous. Such does not necessarily follow.

At common law partnership engagements were joint and therefore an action against one only of the partnership would be bad for defect of parties. Though the common law rule has been abrogated in many states, by making all debts joint and several, such has not been done in Oklahoma. Our statute, Tit. 54 O. S. 1941 §40, which is declaratory of the common law, provides:

"Every general partner is liable to third persons for all the obligations of the partnership, jointly with his copartners."

It thus appears that the reason why one member of the partnership may not be sued alone is not because of absence of liability for the partnership debt, but the absence of a several liability therefor which requires that others jointly liable be joined before judgment can be had. J. R. Cox v. Gille Hardware & Iron Co., 8 Okla. 483, 58 P. 645. It follows from this that where all of the parties jointly bound are impleaded, the judgment, in legal effect, is against each as well as all. In construing section 258, Comp. Stat. 1921, same as Tit. 12 O. S. 1941 §178, concerning procedure against persons jointly liable, it is said in Taylor et al. v. Quinnett, 109 Okla. 241, 235 P. 214:

"Partnership liability is the joint liability of the individuals composing the copartnership; and where a plaintiff has such joint obligors before the court, and obtains a verdict of a jury in his favor against such joint obligors, he is entitled to a judgment against all so jointly liable, and is entitled to satisfaction of his judgment out of the partnership property, or out of the individual property of any of the individual partners brought in by summons."

In the instant actions the judgments were against both Edmonston and Frates as partners. Under the law the judgments are operative and enforceable against each the same as if the judgments had been rendered against them independently of their partnership relationship and, as contended, the same as if no partnership exists. The question is in what respects, if any, are the rights of either Edmonston or Frates prejudiced by permitting the judgments to stand. An assignment of error that fails to show any resulting injury to appellant, or that any of his constitutional or statutory rights were violated, does not justify a reversal. Pease v. Golightly, 168 Okla. 582, 35 P. 2d 469, 94 A. L. R. 956. There is no showing of any prejudice to be suffered by permitting the judgment to stand, and none appearing to the court, we hold that the error of the court, if any, is not ground for reversal of the judgment. The judgment of the court in each of the actions is affirmed.

Defendants in error, in their briefs, severally move this court for judgment upon the supersedeas bonds given. In each of the actions there was filed and appears in the case-made a supersedeas bond executed by Oil States Construction Company as obligor and New Amsterdam Casualty Company as surety, containing the usual conditions to pay the condemnation money and costs in case the lower court's judgment is affirmed. The bond in cause No. 33055, and payable to A. C. Holder, defendant in error, is in the sum of $11,385, and that in cause No. 33056, and payable to Clyde H. Brown, is in the sum of $7,450.

Under Tit. 12 O. S. 1941 §971, and the rules of this court, the defendants in error are entitled to the judgments asked.

It is therefore ordered, adjudged and decreed by this court that defendant in error A. C. Holder have and recover of Oil States Construction Company, principal, and New Amsterdam Casualty Company, surety, nine thousand, one hundred thirty-eight dollars and fifty-five cents ($9,138.55), together with interest at 6 per cent per annum, from July 10, 1945, until paid, and the costs of the action, not exceeding, however, the amount of the bond obligation, for all of which let execution issue.

And it is further ordered, adjudged and decreed that defendant in error Clyde H. Brown have and recover of Oil States Construction Company, principal, and New Amsterdam Casualty Company, surety, five thousand, nine hundred sixty-nine dollars and twenty-seven cents ($5,969.27), together with interest at the rate of 6 per cent per annum, from July 10, 1945, until paid, and costs, not exceeding, however, the amount of the bond obligation, for all of which let execution issue.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, CORN, ARNOLD, and LUTTRELL, JJ., concur.