See also 284 F.2d 510.

**ALBINA ENGINE AND MACHINE WORKS, INC., Appellant,**

v.

**R. A. ABEL and Safway Rental and Sales Company, Appellees.**

**SAFWAY RENTAL AND SALES COM-PANY, Cross-Appellant,**

v.

**R. A. ABEL and Albina Engine and Ma-chine Works, Inc., Cross-Appellees.**

**Nos. 6761, 6762.**

United States Court of Appeals
Tenth Circuit.

May 31, 1962.

Rehearing Denied July 5, 1962.

John A. Johnson and Robert E. Shelton, Oklahoma City, Okl. (W. B. Shively, Portland, Or., with them on the brief), for appellant and cross-appellee, Albina Engine & Machine Works, Inc.

L. D. Hoyt, Oklahoma City, Okl. (A. K. Little, Oklahoma City, Okl., with him on the brief), for appellee R. A. Abel.

Gordon F. Rainey, Oklahoma City, Okl., for appellee and cross-appellant, Safway Rental & Sales Co..

Before PICKETT and HILL, Circuit Judges, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

R. A. Abel brought this action against Albina Engine and Machine Works, Inc., and Safway Rental and Sales Company [1] to recover damages for injuries sustained by him on May 7, 1958, when one of the steel cables suspending scaffolding on which he was standing while working as a painter on the side of a building in Oklahoma City broke, causing him to fall to the pavement below.

Albina was the owner of the equipment which had been rented to Abel's employer by Safway. It was not claimed that Albina's officers or employees directly were negligent, but the trial court held as a matter of law that any negligence of theirs would be imputed to both defendants as joint adventurers in the rental of the equipment.

During the early stages of the trial, the court struck Albina's cross claim against Safway for indemnity, refusing to give further consideration to the matter.

The jury returned a verdict for substantial damages against both defendants.

Albina has appealed in No. 6761 asserting that the trial court committed prejudicial error by determining that it was a joint adventurer and by other rulings, instructions, and comments to the jury which it is charged renders the verdict vulnerable; and Albina further claims that, in any event, the court erred in failing to award it judgment over on the cross claim for indemnity against Safway and in striking the cross claim. Number 6762 is Safway's cross appeal by which it contends that it is not liable to Abel because its employee who was responsible for the accident was acting, in relation to the transaction, as "agent" or "sub-agent" of Albina. Involving the same record below, the appeals are consolidated for disposition here.

The scaffold with its cables, known as an "Albina Mechanical Stirrup" was owned by Albina, an Oregon corporation, and had been rented to Abel's employer (Manhattan Construction Company) by Safway. It had been shipped by Albina from Portland, Oregon, to Safway at Oklahoma City almost two years earlier, pursuant to arrangements between Albina and Safway which will be referred to in more detail later.

During 1958, in the course of a previous rental of the same equipment to another, one of the cables had come in contact with an electric highline and had been burned. The cable was pulled past the damaged area and tied off so that the undamaged section still could be used. One Edwin B. Hayes, Sales Manager of Safway, and in charge of its Oklahoma place of business, inspected the damaged cable the next day. About three weeks later the scaffold and cable were returned to the Safway warehouse. When the equipment was rented to Abel's employer there had been no repair or replacement and no notice to Abel or his employer of the damage. Hayes, at the trial, indicated that he had forgotten about it. There was abundant evidence tending to establish that he was negligent.

In 1955, prior to any use of Albina equipment in Oklahoma City, Albina and Safway had executed a written contract reciting that Safway was employed as "agent and representative" of Albina for the sale, rental and servicing of Albina scaffolds and other designated equipment in Oklahoma, Kansas and the western half of Missouri under terms, conditions and prices to be prescribed by Albina. Title to consigned resale or rental equipment was to remain in Albina until sales were made. It was provided that for rental of Albina equipment to third par-

---

1. For convenience the defendants will be referred to hereinafter as "Albina" and "Safway" respectively.

ties Safway would have a commission of forty percent of the amount to be charged to customers in Albina's rental schedule. Albina agreed to furnish on consignment two mechanical stirrups with baskets and accessories and additional units thereafter sufficient to supply adequately the normal rental demands. The contract as originally written also required Safway to forward to Albina each month copies of all sale, rental and collection records, to accept payment for Albina of all amounts due it, and to make remittance each month after first deducting Safway's commissions and authorized expenses. Safway was obliged to provide dry storage for rental equipment. It was further stated in the original contract that rental forms provided by Albina were to be used, that all contracts of sale, notes and mortgages were to be in the name of and payable to Albina and that any extension of credit would require Albina's approval. Safway further undertook the obligation of acting as "agent" of Albina in "servicing" Albina's scaffolds and equipment.

This written contract, after execution by Albina, was signed on behalf of Safway and forwarded to Albina with a letter dated June 17, 1955, which requested that Safway be permitted to use its own rental forms and that it be permitted to assume all credit risks and carry all paper. Albina agreed to these requests in a letter dated June 21, 1955. In 1957 it was agreed that Albina would be entitled to fifty percent of its "suggested" rental schedule during the time Safway was renting Albina's equipment to others, notwithstanding the amount of rental Safway itself actually received. Except as these changes and subsequent practice with reference to them may have

modified the original written agreement, the latter agreement continued in effect.

The trial court concluded, and subsequently instructed the jury to the effect, that upon the undisputed evidence Safway and Albina were joint adventurers in the rental of the equipment. The appellant Albina challenges this ruling, contending that the evidence established that Safway was no more than an independent contractor with reference to the rental of the equipment and that in any case the joint venture issue should have been submitted to the jury as a question of fact. It is Abel's position that the uncontroverted record established the joint venture; that if for any reason the joint venture did not sufficiently appear, a relationship of principal and agent or master and servant with the same effect upon both appellants did appear; and that the decision of this court upon an earlier appeal fixed the law of the case that Albina was "much more than an independent contractor." Abel v. Albina Engine & Machine Works, 284 F.2d 510 (10 Cir. 1960).

With reference to the latter contention, we cannot agree that in the earlier appeal Albina's status was fixed finally with reference to the question of liability. The prior appeal was taken by Abel from an order of the trial court sustaining Albina's motion to dismiss the complaint on the ground that valid service of summons had not been obtained. The only question decided and thus foreclosed was the validity of service of process upon Albina. While in resolving that question we indicated that Safway was more than an independent contractor on the record then before us, we refrained in form and substance from anticipating a ruling on the issue of liability.[2] Mere-

2. In reversing, this court said after reviewing the facts indicated by various affidavits and documents in the record at that time: " * * * It may be that the relationship between Albina and Safway is not strictly one of principal and agent, or employer and employee. We are not concerned with the strict concept of principal and agent * * * Safway was much more than an independent contractor * * *. It is our conclusion that not only by the contract of the parties but by the overall activities of the parties thereto in carrying out its spirit and purpose, as well as Albina's activities in Oklahoma in furtherance of the sale and rental of equipment which it at all times owned, Albina was engaged in carrying on or doing business in Oklahoma within the meaning of the Oklahoma Statutes providing for service of process on nonresident corporations."

ly by raising, asserting or contesting such a question in the early stages of a legal proceeding a party does not forfeit trial upon the merits, even though the substance of some of the affidavits filed in support or denial of personal jurisdiction might be advanced on the issue of liability.

We thus come to a discussion of the relationship of the defendants as disclosed by the evidence at the trial and the question whether the factual basis of that relationship so uncontrovertably appeared as to permit its determination by the trial court as a matter of law.

The substantive law of the State of Oklahoma applies, the jurisdiction of the federal district court being founded upon diversity of citizenship. In that state an independent contractor is one who, exercising an independent employment, contracts to do work according to his own methods and without being subject to the control of his employer except as to the result of the work. Traders and General Insurance Co. v. Edwards, 216 F.2d 441, (10 Cir. 1954) cert. den. 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 744; Long v. Valley Steel Products Co., 207 F.2d 505 (10 Cir. 1953); Cities Service Oil Co. v. Kindt, 200 Okl. 64, 190 P.2d 1007 (1948). A joint venture is a special combination of two or more persons where, in some specific venture, a profit is jointly sought without any actual partnership or corporate designation. Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co., 209 F.2d 917 (10 Cir. 1954); Taylor v. Brindley, 164 F.2d 235 (10 Cir. 1947); United States Fidelity & Guar. Co. v. Dawson Produce Co., 200 Okl. 540, 197 P.2d 978 (1948).

None of the parties claims that there is any Oklahoma case which, on closely parallel facts, identifies the relationship of the defendants, although all assert that the principles of various adjudications positively indicate a result favorable to themselves. The peculiar circumstances here involved render especially appropriate the truism that each of such problems must be decided upon its own circumstances, with little help to be anticipated from a detailed consideration of other cases. Traders and General Insurance Co. v. Edwards, 216 F.2d 441 (10 Cir. 1954), cert. den. 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 744, supra; United States v. Wholesale Oil Co., 154 F.2d 745 (10 Cir. 1946).

It seems conceded by Albina that the arrangement delineated by the original written contract would constitute Safway more than an independent contractor. But, says Albina, the changes effected by correspondence immediately following were more than minor; and there was a further major change in August 1, 1957, when Safway became free to charge customers whatever rentals it chose, being obligated only to pay to Albina fifty percent of the schedule Albina recommended as charges to customers. This latter consideration would not of itself negate the relationship found by the court. Albina still established the rental base for third parties and for its own participation in the profits of the venture and, as a practical matter, that rental price was customarily charged and collected by Safway. The responsibility assumed by Safway for collection seems not merely in the nature of that of a renter on its own account but more as an additional burden assumed by one of two participants interested in renting equipment to third parties for mutual profit.

The rights of the joint adventurers may be fixed by agreement so as to shift control and the relationship may exist even though a single adventurer owns all of the property used in the joint adventure. In other words the use of property may be put in a joint venture. United States Fidelity & Guar. Co. v. Dawson Produce Co., 200 Okl. 540, 197 P.2d 978 (1948), supra. Indications in White v. A. C. Houston Lumber Co., 179 Okl. 89, 64 P.2d 908 (1937) that there must be "a joint interest in the property" must be understood as being limited to the context of the mining partnership or venture there involved or other analogous situations.

■ Safway was not, as urged by Albina, a mere bailee without a community interest or joint sharing of profits with the bailor. It is to be noted in this connection that Albina was entitled to no rental during the time Safway had possession of its equipment except for the period it was rented to third parties for their mutual benefit. Profits in practical effect were divided in accordance with the formula established by the agreement, subject to the obligation of each to contribute certain types of expense. An agreement to share losses is not an indispensable foundation of a joint venture. E. D. Bedwell Coal Co. v. State Industrial Commission, 157 Okl. 227, 11 P.2d 527 (1932). If an understanding of some sort on this point were essential it may be found implicitly in the agreed consequences of the basic arrangement, whereby Albina, among other divided losses, would be required to bear depreciation on its equipment and Safway would be required to bear the cost of its warehousing during times no income was being received from rentals. There seems to be no reason why parties to a joint venture cannot limit by special contract their respective profits and agree which part of the expense each should bear before participating in profits. United States Fidelity & Guar. Co. v. Dawson Produce Co., 200 Okl. 540, 197 P.2d 978 (1948), supra; E. D. Bedwell Coal Co. v. State Industrial Commission, 157 Okl. 227, 11 P.2d 527 (1932), supra. See 30 Am.Jur. Joint Adventures, § 11, p. 947. Cf. Kasishke v. Baker, 146 F.2d 113 (10 Cir. 1944); and Bosworth v. Eason Oil Co., 202 Okl. 359, 213 P.2d 548 (1949).

■ Albina in its brief calls attention to the forms of contract used by Safway in renting the equipment, which recited that "lessor" (Safway) "is not the agent of any manufacturer of said equipment * * *." However, that same contract also recited that the title to the equipment "is and shall remain in lessor (Safway) at all times." The latter patently was not the fact unless Albina's rights were considered to be united with Safway's. This emphasizes the importance of looking to the substance of such transactions rather than their mere form. A disinclination to assume the burdens of a joint venture does not necessarily preclude the creation of that relationship, since the substance of the legal intent rather than the actual intent may be controlling. United States v. Wholesale Oil Co., 154 F.2d 745 (10 Cir. 1946). The status may be inferred from the purpose of the enterprise and the acts and conduct of the parties in relation to the engagement, which in some cases may speak above the expressed declarations. O.K. Boiler & Welding Co. v. Minnetonka Lumber Co., 103 Okl. 226, 229 P. 1045 (1924). Cf. Edmonston v. Holder, 203 Okl. 189, 218 P.2d 905 (1948).

■■ Where the scope and intent of the agreement are established without substantial dispute, the question of what relationship was created was one of law for the court. Taylor v. Brindley, 164 F.2d 235 (10 Cir. 1947). This may be so even though the evidence discloses that the written contract was modified by contemporaneous or subsequent correspondence or practice. United States Fidelity & Guar. Co. v. Dawson Produce Co., 200 Okl. 540, 197 P.2d 978 (1948), supra. The fact that the legal problem is a difficult one does not change the rule. Not discounting the persuasive effect of some of the decisions to the contrary, based upon a partial parallel of circumstances, it is our opinion that given all of the factors of the present case the Oklahoma court would hold that the relationship was that of joint adventurers. We thus conclude that the experienced trial judge did not misapprehend principles or applications taught by the Oklahoma cases in telling the jury that, on the uncontroverted facts, Safway and Albina were joint adventurers with respect to the rental of the equipment in question. This brings us to, and in a sense in collision with, the primary contention of the other defendant.

■ Safway argues that, there being no evidence tending to prove it guilty

of gross negligence or fraud in the appointment of the "sub-agent" Hayes or to show that it "cooperated" in any negligent act or omission on the part of Hayes, as a matter of law it is not liable to either plaintiff or Albina. In support of its position Safway sees great significance in the fact that Albina exerted "supervision, direction and control" over Hayes, even though these were unconnected with any negligence of Hayes giving rise to the liability in question.

Albina's field men called upon Hayes, shipped equipment directly to him in Oklahoma City, furnished him a copy of Albina's sales guide "for your assistance in the promotion of our Albina Mechanical Stirrups and Albina Climbers," and wrote Hayes specific directions concerning the making of sales and rentals and concerning invoicing and correspondence procedures. And there were received in evidence a large number of other documents indicating direct communications and cooperation between Hayes and representatives of Albina.

It is not claimed, however, nor is there evidence to indicate, that Hayes did anything for Albina that was not within the scope of his duties for, and in furtherance of the interests of, his employer Safway. Considering that Safway was a corporation the Oklahoma business of which could be conducted only through its officers, agents or employees, we do not see that the circumstances established either a direct agency between Albina and Hayes or a subagency in the sense relied upon by Safway. On the contrary, it would seem that this indication of cooperative effort between Albina and Safway, through their respective corporate officers and managers, affords additional confirmation of the joint adventurer relationship and the mutual right of control for the accomplishment of its objectives.

But even though Hayes be deemed also an "agent" or "subagent" of Albina in the rental of the equipment, Safway would not be relieved from liability under the circumstances of this case, nor would Albina. It is true that Barker v. General Petroleum Corp., 72 Ariz. 187, 232 P.2d 390 (1951) modified on other grounds 72 Ariz. 238, 233 P.2d 449, reversed in part on other grounds 77 Ariz. 235, 269 P.2d 729, and other authorities, principally from Arizona and California, lend surface color to Safway's contention.[3] Vogler v. Jones, 199 Okl. 156, 186 P.2d 315 (1947) also is relied upon, but this case is inapposite and merely would protect innocent public employees from liability for the negligence of subordinates in the same governmental unit. See also Lowe v. Storozyszyn, 183 Okl. 471, 83 P.2d 170 (1938). Whether the Arizona or California decisions would invite such an application as Safway seeks to make in the present case need not be discussed since it is clear in principle that the Oklahoma decisions would not. Even though we were to accept Safway's premise that Hayes was the "subagent" of Albina, Safway, as primary agent, would be liable to the third party for the negligence of Hayes as is any principal or master for the conduct of his agents or servants acting in the course of their employment[4] and the

3. But see Christensen v. Pryor, 75 Ariz. 260, 255 P.2d 195, (1953) and Hilton v. Oliver, 204 Cal. 535, 269 P. 425, 61 A.L.R. 297 (1928).

4. See Seavey, Subagents and Subservants, 68 Harvard Law Review 658 (1955). Professor Seavey points out in clarification of the apparent confusion among some of the cases in this area: An agent may be authorized to appoint another agent who will have the same relation to the principals as if appointed directly by the latter. This appointment may be by way of delegation, that is, in substitu- tion for the appointing person, or it may be to do acts which the appointing person himself would not normally do or be authorized to do. In both cases the persons thus employed are employees or agents, not of the employing agent, but of the persons for whom the employing agent works. For clarity the person so appointed may be designated as "subordinate agent." He is not responsible for the conduct of subordinate agents of the principal, provided he has not been guilty of substandard conduct in appointing or supervising them, even though

principal also would be liable for obvious reasons. See Keith v. Mid-Continent Petroleum Corp., 272 P.2d 371 (Okl. 1954); Baker-Riedt Motor Co. v. Moore, 93 Okl. 153, 220 P. 25 (1923); Appleby v. Kewanee Oil Company, 279 F.2d 334 (10 Cir. 1960); Quinn v. Southgate Nelson Corporation, 36 F.Supp. 873, (D.C. S.D.N.Y.1941) aff'd 121 F.2d 190 (2 Cir. 1941), cert. den. 314 U.S. 682, 62 S.Ct. 185, 86 L.Ed. 546. Cf. Atlas Life Ins. Co. of Tulsa v. Foraker, 196 Okl. 389, 165 P.2d 323 (1946). Far from Safway's appointing a subordinate agent solely for Albina within the contemplation of the rule sought to be invoked, both Safway and Albina, as corporations, were conducting the joint venture through their respective officers, agents and employees, including Hayes as manager for Safway.

■ We have examined the trial court's charge and are of the opinion that the issue of proximate cause appropriately was submitted to the jury under proper instructions [5] despite Safway's assignment of error to the contrary.[6]

■ Nor did the trial court err, as contended by Safway, in refusing to give a requested instruction to the effect that if the jury found that the injury to plaintiff proximately resulted from negligence on the part of plaintiff's employer, Manhattan Construction Company, it should return a verdict of no cause of action in favor of Safway. Even though there were some evidence from which it might be argued that Abel's employer was guilty of negligence in failing properly to inspect, or to furnish safe tools with which to perform work, concurrent negligence on the part of Manhattan would relieve neither Safway nor Albina of liability otherwise established.

■ Albina asserts that prejudicial error was committed by the trial court during the selection of the jury and by failure to give a cautionary instruction in view thereof. It is contended that several jurors were questioned "whether a verdict could be returned by them in good conscience for as much as Two Hundred Thousand Dollars if the evidence showed that the plaintiff was permanently and totally disabled" and that upon receiving negative answers in two or three instances prospective jurors were excused by the court "for cause."

The reporter did not record the voir dire examination; and there was no request from either defendant that he do so, even after the interrogation now objected to was commenced. Hence, a timely reconstruction of the interrogation was not attempted. No exception was noted to the court's examination nor to its actions in excusing jurors for cause until requests to instruct were submitted.[7] The court's charge did not

the courts have sometimes improperly used the term "subagents" to describe such subordinate agents. "On the other hand, we have the situation that is created when an agent agrees with his principal that he will accomplish a result for the principal, but for this purpose will use agents of his own selection to whom he pays compensation and for whose conduct he is responsible to the principal." For such a person the term "subagent" would be appropriate. "The agent is liable to third persons for the conduct of a subagent, as is any principal or master for the conduct of his agents or servants."

5. Among other things the court said: "You are further advised that if you fail to find by a fair preponderance of the evidence that Hayes was guilty of any negligence, that is, if you believe he conducted the defendant's business as any reasonably prudent person would have under similar conditions, or should you fail to find by a fair preponderance of the evidence that the asserted burning by electrical current of the wire rope in question was in fact the cause of the fall and injury in question, then your verdict should be for the defendants."

6. Safway does not claim that there was insufficient evidence on the question of proximate cause to go to the jury, nor that its own requests to charge on the subject were improperly refused, but only that the court committed fundamental error in failing to charge at all or in the lack of detail with which the charge was made on the subject in view of discrepancies in the asserted evidence.

7. Some color then was lent to Albina's construction of what took place by the following colloquy out of the presence of the jury: "Mr. Johnson: The court

specially take note of the voir dire examination but the jury was told, among other things, that it was the sole judge of the facts. With reference to damages the court said: "Should you find for the plaintiff, you should award him such an amount as will fairly and justly compensate him for the injuries and damages he has suffered as a direct result of the negligence of the defendants. However, the amount of your award must not, in any event, exceed the amount sued for, $477,760.00."

Unless the context afforded a different complexion to the proceedings or softened the possible impact suggested by Albina's reconstruction of what was said and done, a substantial question of prejudice might have been presented by timely exception. Dowell, Inc. v. Jowers, 166 F.2d 214, 2 A.L.R.2d 442 (5 Cir. 1948), cert. den. 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759; on retrial 182 F.2d 576; cf. Rhodes v. Lamar, 145 Okl. 223, 292 P. 335 (1930); Anno. Propriety of Inquiry on Voir Dire as to Juror's Attitude Toward Amount of Damages Asked, 82 A.L.R.2d 1420; Anno. Instruction Mentioning or Suggesting Specific Sum as Damages in Action for Personal Injury or Death, 2 A.L.R.2d 454. But the voicing of a timely objection was especially important in this case in that it would have made possible as accurate a reconstruction of the record on the point as the absence of verbatim reporting could have permitted. The trial court would have had an opportunity to correct appropriately in context any erroneous impression that may have appeared at the time. To attempt to have this done only at the end of the trial, under the circumstances, may not be deemed sufficient to save the exception, nor does it permit us, with any degree of assurance, to suppose that there could have been prejudice resulting from the court's refusal to give Albina's request number 10 in view of the instructions actually given. Bradford Builders, Inc. v. Sears, Roebuck & Co., 270 F.2d 649 (5 Cir. 1959); Strickland v. Perry, 244 F.2d 24 (5 Cir. 1957), cert. den. 355 U.S. 847, 78 S.Ct. 72, 2 L.Ed.2d 56; Peresipka v. Elgin, Joliet and Eastern Railway Co., 217 F.2d 182 (7 Cir. 1954), rev. as to intervenor's claim 7 Cir., 231 F.2d 268. See also Bass v. Dehner, 103 F.2d 28 (10 Cir. 1939), cert. den. 308 U.S. 580, 60 S.Ct. 100, 84 L.Ed. 486, reh. den. 308 U.S. 635, 60 S.Ct. 136, 84 L.Ed. 528.

Contrary to Albina's contention, we think that clearly it was within the trial court's discretion to refuse to grant additional peremptory challenges in addition to the three challenges which it allowed Albina and Safway jointly. 28 U.S.C. 1870; United States v. Handy, 130 F.Supp. 270, (D.C.M.D. Penn.1955), aff'd 3 Cir., 224 F.2d 504; aff'd 351 U.S. 454, 76 S.Ct. 965, 100 L.Ed. 1331. Albina's complaint of the court's comments to the jury concerning the mortality table which had been received in evidence on the issue of damages is sufficiently without merit as to require no special comment.

We thus conclude that plaintiff's judgment against the defendants should stand.

There remains for consideration the rights of Albina to indemnity from Safway. There was no claim or

will recall that in the process of selecting the jury at the outset of the case there were three jurors who were excused for cause when they answered questions to the effect that they could not conscientiously return a verdict for $200,000 in the event they found plaintiff was permanently and totally disabled. The court: I remember. They were taken off the jury. Mr. Johnson: For that reason I wanted to call the Court's attention to Albina's requested instruction number 10. The court: I will look at it. You

may proceed." Albina's requested instruction would have had the court refer to the voir dire examination and charge in effect that it had not been the intention of the court thereby to influence the jury and that, "It is the absolute function of the jury, and not of this Court, to determine the questions of liability, if any, and if liability be found to determine the amount of just compensation which the jury might award to the plaintiff, if any."

evidence that Albina was in any way directly negligent, such liability as it may have incurred having arisen vicariously through the negligence of its co-adventurer. No legal justification appears for the trial court's refusal to consider Albina's cross claim for judgment over against Safway. The question of indemnity under the circumstances should have been disposed of in the main action. Peak Drilling Co. v. Halliburton Oil Well Cement. Co., 215 F.2d 368 (10 Cir. 1954); Thomas v. Malco Refineries, 214 F.2d 884 (10 Cir. 1954); U. S. v. Acord, 209 F.2d 709 (10 Cir. 1954); cert. den. 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 1115; Blair v. Cleveland Twist Drill Co., 197 F.2d 842 (7 Cir. 1952). See also Dery v. Wyer, 265 F.2d 804 (2 Cir. 1959); Ford Motor Co. v. Milby, 210 F.2d 137 (4 Cir. 1954). Cf. Security Insurance Co. of New Haven v. Johnson, 276 F.2d 182 (10 Cir. 1960).

The case is remanded to the trial court for reinstatement of Albina's cross claim and further proceedings in harmony with this opinion; otherwise the judgment is affirmed.