**CREST CONSTRUCTION COMPANY, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, a Foreign Corporation, Defendant.**

**Civ. No. 75–0697–D.**

United States District Court, W. D. Oklahoma.

May 7, 1976.

**566**

Robert E. Manchester, Oklahoma City, Okl., for plaintiff.

Edgar Fenton, Robert Petrick, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

In this diversity action Plaintiff Crest Construction Company (Crest) seeks recovery on a "Comprehensive Crime Policy" of insurance issued to it by Defendant Insurance Company of North America (I.N.A.). Plaintiff filed this action in the District Court of Oklahoma County, State of Oklahoma. Defendant removed the action to this Court.

The Petition alleged that Defendant issued to Plaintiff a "Comprehensive Crime Policy" No. TDD 12 73 which was effective from January 3, 1973 to January 6, 1976; that this policy insured Plaintiff against the fraudulent or dishonest acts of its employees; that between January 15, 1973 and August 2, 1973 Plaintiff was a contractor on an apartment project; that during this same period Roy Cribbs (Cribbs) was an employee of Plaintiff working on this project; that during this time Cribbs took from Plaintiff tools and materials worth more than $20,000; and that Plaintiff has demanded that Defendant pay its losses but Defendant has refused to pay. Defendant denies both liability and the amount of Plaintiff's claim. At the Pretrial Conference the issues of liability (or coverage) and loss were separated. The first issue has been submitted to the Court on a Stipulation of Facts of the parties.

The question before the Court on the liability issue is whether, at the time of the alleged thefts, Cribbs was an employee of Crest as claimed by Plaintiff or a joint adventurer or partner with Crest's President and 100% owner, Dale Smith (Smith), and Crest's Controller, David C. Gallion (Gallion) as claimed by Defendant. The parties agree that if at the time of the alleged thefts Cribbs was an employee of Crest any losses occasioned by his defalcations would be covered by the policy but that if Cribbs was a partner or joint adventurer with Smith and Gallion such losses would not be covered by the policy.

The materials submitted to the Court on the parties' Stipulation include: the deposition of Smith and attached exhibits; the deposition of Gallion and attached exhibits; and business records from Crest. In the Pretrial Conference Order the parties agreed that the insurance policy attached to the Petition was issued by Defendant to Plaintiff.

The depositions of Smith and Gallion show that at some time before January 15, 1973 Crest entered into a series of sub-contracts for the performance of construction work on the Buena Vista Apartments in Alva, Oklahoma. Two or three weeks after January 15, 1973 Smith, Cribbs, and Gallion executed an agreement relating to various functions to be performed by the parties with respect to the construction of the apartments. This agreement was prepared by Gallion on January 15, 1973 and bears that date. This agreement is as follows:

### "MEMORANDUM

To: Dale Smith
    Roy Cribbs
From: David Gallion
Re: General Agreement
Date: January 15, 1973

'This memo is to reduce to writing some of the areas covered in prior conversations, that are applicable to the association of Smith, Cribbs, and Gallion.

RESPONSIBILITY:

*Smith (Crest):* To provide financial stability in the initial stages of operations, until such time as undertakings can.

To provide a vehicle that will give an (illegible) for purchasability and transacting business that is established and going.

To provide overall control in all areas.

To advise and counsel in the making of decisions, and to have the responsibility to make a final decision, if necessary.

*Cribbs:* Responsible for on-site supervision, which would include all areas in the running of a job.

To estimate prospective work, and/or to assist in the estimating of jobs.

To devote full time of his experties in any area that will inhance (sic) the progress of the association of Smith, Cribbs and Gallion. (sic)

To follow any and all procedures that are (illegible) may be established for effective control association.

*Gallion:* Responsible for the installation and the administration of any and all procedures that are and that may be established.

To devote such time as is necessary in all areas to insure that all necessary documentation is being accumulated for effective control.

To follow any and all procedures that are and that may be established.

*REMUNERATION:*

*Smith (Crest):* To participate in any net profit at rate of 52.50%.

To be reimbursed for any and all expenses that are applicable to any work of this association.'

*Cribbs:* Salary to be $300.00 per week until such time that monies due Cribbs for prior work done on Haujntolla Nursing Home are received, then salary will be $275.00 per week.

To be advanced a 'petty cash' in the amount of $50.00 for expenses that are directly applicable to job cost. This amount to be maintained by a weekly reimbursement of expenses, as reported (illegible) report.

A place of lodging will be provided at the expense of the particular job in situations (illegible) is a second place of lodging.

*Cribbs—continued:* to be furnished a pick-up for use in the carring-on of and the pursueing of work that involves this association. (sic)

To participate in any net profit at the rate of 23.75%.

*Gallion:* Salary to be $1,250.00 per month, payment to be made from Crest Construction 'Special' account which has been opened primarily for the (illegible) of the above mentioned associations' business. (sic) Whenever possible an allocation, for reimbursement to the 'Special' account, will be made in any time applicable to work that is not a part of this particular association.

To be reimbursed for all out of pocket expenses on the date of each pay period.

Expenses of operating and maintaining an automobile, that is primarily used for company business, to be paid by the association.

To participate in any net profit at the rate of 23.75%.

We understand that the areas here-to-fore mentioned in this memorandum, are not all inclusive but are the basic agreements as this association starts operation, and that additions and/or deletions can be made as need be.

We the undersigned agree in general (illegible) all items included in this memorandum, and furthermore we agree that at the completion of

the two jobs, these being Buena Vista and Huajntolla Nursing Home, or by January 15, 1974, that this memorandum will be revised and adjustments made as agreeded by Smith, Cribbs and Gallion. (sic)'"

The parties entered into performance under this agreement. Thereafter dissension arose among the parties in that Cribbs was excessively absent from the job. Smith considered terminating Cribbs but did not. After a conversation with Smith, Cribbs' job performance improved. Smith then was informed that Cribbs was taking materials from the job to build a personal home.

At this point Smith either fired Cribbs or terminated their agreement.

The crux of this case is the January 15, 1973 agreement. It is Defendant's position that this agreement creates a partnership or joint adventure between Smith, Cribbs, and Gallion, and, therefore, its policy provides no coverage for Cribbs' defalcations. It is Plaintiff's position that this agreement does not create a partnership or joint adventure; that Cribbs was a Crest employee, and, therefore, it is entitled to recover under the policy.

A partnership is an association of two or more persons to carry on as co-owners a business for profit. 54 Oklahoma Statutes § 206. A joint adventure is a special combination of two or more persons, whether corporate, individual, or otherwise which seeks a joint profit in a specific venture. *Parks v. Riverside Insurance Company of America*, 308 F.2d 175 (Tenth Cir. 1962); *United States Fidelity & Guar. Co. v. Dawson Produce Co.*, 200 Okl. 540, 197 P.2d 978 (1948). Partnerships and joint adventures are separate legal relationships although they are generally governed by the same rules of law. The principal difference between the two relationships is that a joint adventure is usually limited to a single transaction while a partnership encompasses a continuing course of business. 48 C.J.S. *Joint Adventures* § 1(6). The essential elements of a partnership are: (1) an intent by the parties to form a partnership, (2) participation by all parties in both profits and losses, and (3) such a community of interest as far as third persons are concerned as enables each partner to make contracts, manage the business and dispose of partnership property. *Dowdy v. Clausewitz*, 361 P.2d 288 (Okl.1961). The essential elements of a joint adventure are: (1) a joint interest in the property by the parties sought to be held as partners; (2) agreement, express or implied, among the parties to share in the profits and losses of the venture; and (3) actions or conduct showing cooperation in the project. *Hancock v. Stradley*, 482 P.2d 580 (Okl.1971); *King-*

*Stevenson Gas & Oil Co. v. Texam Oil Corp.*, 466 P.2d 950 (Okl.1970).

With regard to the first element of partnership, intent of the parties to form a partnership, the issue is whether the January 15, 1973 agreement shows an intent by Smith, Cribbs and Gallion to carry on a business as co-owners for profit. It is clear that the parties intended to carry on a business for profit because the agreement provides for the division of profit after the completion of the subject job(s). However, the agreement is not clear on the question of ownership. Smith was to provide all necessary funds. Cribbs and Gallion were to provide the labor. The contract which was the subject matter of the agreement was held by Crest. As a general rule, in order to constitute a partnership, the parties must have a community of interest as common owners of the business which constitutes their joint undertaking. However, in view of the fact that the contribution of a partner need not be money or property, but may consist of services or skill, a partnership may exist where the members have an interest in the profits only and no interest in the property from which the profits are to be derived. Thus, where persons who are associated in a common business share both profits and losses, it is not necessary to the existence of a partnership that there be joint ownership of the property or capital used to carry on the business. 68 C.J.S. *Partnerships* § 16.

In this case, the property used to carry on the business was Crest's contract(s) with the owners of the subject apartment(s). There is no indication that Cribbs and Gallion had any ownership interest in this contract(s). However, in view of the above rule it is not absolutely necessary to the existence of a partnership that all partners own a portion of the business capital. If Cribbs and Gallion contributed skill and labor to the enterprise and were to share in the profits and losses thereof, a partnership could exist even though they did not own the capital. Thus, the second element of partnership, sharing in the profits and losses, must be considered in order

to determine the first. However, as the second element of both joint adventure and partnership are the same, the first element of joint adventure will be considered next.

■ The first element of a joint adventure has been stated by the Oklahoma Supreme Court to be "a joint interest in the property by the parties sought to be held as partners." *Hancock v. Stradley, supra.* This statement is far from being self-explanatory, and the decisions have not been overly explicit as to what constitutes a joint interest in the property. However, it is clear that joint interest is not joint ownership. Joint ownership of the property used in carrying on the business is not necessary to the existence of a joint adventure. *United States Fidelity & Guar. Co. v. Dawson Produce Co., supra.* Nor does joint interest necessarily equate with joint control. While the right of mutual control of subject matter of the enterprise is essential to the creation of a joint adventure, the rights of the parties with respect to management and control of the adventure may be fixed by agreement. *United States Fidelity & Guar. Co. v. Dawson, supra.* Thus, it appears that "joint interest in the property" as used by the Oklahoma Supreme Court means only that the parties need be engaged in an enterprise in which they have a community of interest and a common purpose in its performance. See 48 C.J.S. *Joint Adventure* § 2.

In this case Smith (Crest) was to provide all necessary funds. Cribbs and Gallion were to provide their services. Profits were to be divided after expenses were returned to Smith (Crest). Thus, it appears that the parties had a community of interest and a common purpose. The community of interest was the pooling of capital and labor. The common purpose was the maximization of profits. Therefore, the first element of a joint adventure is found to exist in the subject agreement.

■ The second element of both a partnership and a joint adventure is the same, participation in both profits and losses by all members. In order for an association to constitute a joint adventure it is

necessary that the parties agree to share both in the profits and losses of the enterprise. The absence of an express agreement to share in the losses is, however, not fatal. An agreement to share in losses may be implied from an agreement to share in profits. 48 C.J.S. *Joint Adventure* § 2. Cf. *Tulsa County Truck & Fruit G. Ass'n v. McMurphey,* 185 Okl. 132, 90 P.2d 927 (1939); *Albina Engine And Machine Works, Inc. v. Abel,* 305 F.2d 77 (Tenth Cir. 1962). The rule respecting partnerships is similar. It is essential to the partnership relationship that the parties share both in the profits and losses of the enterprise. *Whitney v. Harris,* 169 Okl. 288, 36 P.2d 872 (1934). However, it is not necessary to the partnership relationship that there be an express agreement to share in the losses. Such an agreement may be implied if the intent of the parties to form a partnership is otherwise made clear. Cf. *Municipal Paving Co. v. Herring,* 50 Okl. 470, 150 P. 1067 (1915); *Chowning v. Graham,* 74 Okl. 232, 178 P. 676 (1918).

In this case there is no express agreement to share losses. Smith (Crest) undertook to provide financing for the enterprise. Smith (Crest) was to participate in profits at the rate of 52.50% and was to be reimbursed for its financing. Cribbs was to be paid a salary from a special Crest account, participate in the profits at the ·rate of 23.75%, provided with expense money and a place of lodging. Gallion was to be paid a monthly salary out of the special Crest account, but the account was to be reimbursed for work done by Gallion which was not attributable to the association. Gallion was also to participate in profits at the rate of 23.75% and be reimbursed for expenses.

■ Thus, Cribbs stood to lose nothing by a failure of the enterprise except a share of the net profits. Cribbs did not furnish his skill in the sole expectation of receiving a share of the profits as he was compensated for his time and expenses. If Cribbs had provided his services solely in return for a share of expected profits, it could be seen that he stood to share in the losses of the enterprise as well as its profits. Lost labor

could be valued as highly as lost capital. However, Cribbs was being compensated for both his labor and expenses. Cribbs stood only to lose a share of the profits. This is not sufficient to constitute a sharing of the losses of the enterprise. In order to constitute a partnership or joint enterprise members must stand to sustain an actual loss by the failure of the enterprise. Of course, a member of a partnership or joint adventure might provide his services in return for a minimal compensation in the hopes of sharing in the profits of the enterprise and thereby stand to sustain a loss by the failure of the enterprise. However, such is not the case here. Cribbs was to be compensated at a rate of $275–300 per week. This is not a minimal amount. Nor has it been shown that this is less than Cribbs would normally take to do such work, or that he took a reduced salary in the hopes of a share of the profits. Therefore it must be concluded that Cribbs did not stand to share in the losses of the enterprise and a joint adventure or partnership did not exist between Smith, Cribbs and Gallion for that reason.

Moreover, this is not a case in which an agreement to share in losses can be implied. In order to imply such an agreement the intent of the parties to form a partnership or joint adventure would have to be clear. There is no such clear intent expressed in the instant agreement. In view of the facts that the project was to be financed entirely by Smith (Crest), that Cribbs and Gallion were to be paid salaries by Smith (Crest) and there is no express or implied agreement for Cribbs or Gallion to share in the losses of the enterprise, it must be concluded that the relationship created by the subject agreement is essentially that of employer/employee.

Accordingly, as to the first separated issue the Court finds and concludes that Cribbs was an employee of Plaintiff and Defendants' policy of insurance would cover any defalcations attributable to him. It is thus necessary for the Court to entertain the second separated issue. Such second separated issue will be set for a further Pretrial Conference. Judgment will be withheld on the Court's determination of the first separated issue until the close of the case and only one Judgment will be entered herein.