Kiehl v Cavicchio (2023 NY Slip Op 50706(U))

[*1]

Kiehl v Cavicchio

2023 NY Slip Op 50706(U)

Decided on July 12, 2023

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 12, 2023
Supreme Court, New York County

John Kiehl, Plaintiff,

against
Robert S Cavicchio, SOUNDTRACK NEW YORK, LLC D/B/A SOUNDTRACK GROUP, SOUNDTRACK BOSTON, LLC D/B/A SOUNDTRACK GROUP, CAV CORP., CAVICCHIO FAMILY MASSACHUSETTS LLC, CAVICCHIO FAMILY NEW YORK LLC, CAVICCHIO CHILDREN'S TRUST, OTHER UNKNOWN PERSONS AND/OR ENTITIES, Defendant.

Index No. 656114/2020

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 35, 39, 40, 41, 42, 43, 44, 45, 46, 48, 56 were read on this motion to DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 003) 49, 50, 51, 52, 53 were read on this motion to STRIKE PLEADINGS.
In the complaint in this action, plaintiff John Kiehl alleges that defendants wrongfully deny that he is a partner in The Soundtrack Group (Soundtrack), which defendant Robert S. Cavicchio claims to own in its entirety. Kiehl also asserts that he owns half of the real estate that Soundtrack uses for its operations, but that Cavicchio has improperly transferred these assets to various trusts and companies under his control. Currently, the court considers defendants' pre-answer motion to dismiss (motion sequence number 001, NYSCEF Doc. No. 9), and defendants' motion to strike two of the affidavits that Kiehl submitted in opposition to that motion (motion sequence number 003, NYSCEF Doc. No. 49). The court consolidates the motions for disposition and, for the reasons below, grants the motion in part and denies it in part.
The Complaint
According to the complaint, in 1977 Kiehl and defendant Robert Cavicchio started either a partnership or a joint venture, the purpose of which was to build a music recording studio for audio and multimedia projects (NYSCEF Doc. No. 1 [Complaint]). The complaint states that since its founding, the business has grown "into a multimillion[-]dollar, award-winning audio and video recording, engineering, and production company, which serves music, film, and advertising clients, with studios in Boston ('Soundtrack Boston') and New York City ('Soundtrack New York'). . ." (id., 17). The complaint states that Kiehl "shoulder[ed] all the technical demands required in the creation of a recording studio" (id., 33) and that he variously worked as a "musician, composer, producer, equipment maintenance engineer, and equipment maintenance engineer," while Cavicchio handled the company's administrative, legal, financial, and business affairs (id., 34). As such, the complaint states, Kiehl has made substantial contributions to the business, which would not have thrived without his participation. The [*2]complaint alleges, among other things, that Kiehl's expertise enabled the company to expand in 1995, adding video editing, production, and post-production services for film and television projects.
Moreover, the complaint states that Kiehl and Cavicchio "have been — and have functioned as — partners, co-owners, and the most senior officers of Soundtrack" and that the two have managed the business together (id., 22). The men periodically drew an equal percentage of the business's profits, in the form of profit sharing, bonuses, or commissions. According to the complaint, Kiehl also shared in the company's losses. The complaint states that as a result of losses the business sustained in 2002, there was "a dramatic reduction in Kiehl's profit-sharing payments" (id., 83). Allegedly, too, Kiehl used around $350,000 of the $515,000 he had made over the years under the parties' profit-sharing agreement "to pay for expenses that the Soundtrack Business needed to sustain and expand its growth" (id., 85). As one purported example of Kiehl's losses, the complaint states that Kiehl, Cavicchio, and Soundtrack's studio manager Jeannie McGrail formed a separate joint venture called Partners Leasing, "whose purpose was leasing equipment, which was to be funded in equal amounts by the participants and whose profits would be distributed to the participants" (id., 87). The complaint indicates that Partners Leasing operated from approximately 1995 to 2005. Further, the complaint asserts that Kiehl agreed to work for half of his annual compensation for nearly two years while Soundtrack had "cash flow problems," and that he was not reimbursed until the end of 2017 (id., 90). The complaint also states that plaintiff "personally paid other expenses of the business without reimbursement" (id., 91).
Finally, the complaint states that over the years, and without correction by Cavicchio, Kiehl publicly and privately identified himself as a co-founder of Soundtrack. Allegedly, when they commenced the business around 1977, Cavicchio "repeatedly and consistently" told clients, employees, and other individuals that Kiehl was his partner (id., 50), and years later he told various clients of Soundtrack that if he retired, he would have to pay both Kiehl and Jeannie McGrail, who had worked as Soundtrack's studio manager. The complaint also states that 25 years ago, Cavicchio told Kiehl that Kiehl was entitled to half the value of the business.
Over the years, the complaint states, Soundtrack has acquired real estate valued at around $75 million.[FN1]
Although initially Soundtrack leased a recording space, in 1985 Soundtrack purchased its own building for $350,000 (the Boston Property). According to the complaint, this property currently is valued at around $30 million. When the business expanded into New York, it purchased a commercial condominium on the fifth floor of a building in the Flatiron District (the Flatiron Property). Starting in 2014, it has leased this space to other parties. Around 1998, Soundtrack purchased a larger space at 936 Broadway in Manhattan (936 Broadway), and in 2005, it purchased another space on West 22nd Street. According to the complaint, Cavicchio "improperly transferred some or all of the ownership interests in the Soundtrack Real Estate from the Soundtrack Business to [his] family members and/or [defendants] the Cavicchio Children's Trust, Cavicchio Family Massachusetts LLC, Cavicchio Family New York LLC, and/or other trusts or entities owned by or benefiting Cavicchio's family members" (id., 32). [*3]These entities include defendant the Cav Corporation (Cav Corp), which Cavicchio started in the 1970s.
The dispute at issue apparently started around December 2018, when Kiehl announced that he was considering retirement and that he expected his "rightful share of the value of the assets and profits" of Soundtrack (id., 92). Kiehl reiterated his intention the following December. Cavicchio allegedly responded that Kiehl "was not entitled to any such portion of that value" (id., 93). As the parties' positions were irreconcilable, Kiehl commenced the action at hand.
There are seven causes of action in the complaint. The first cause of action asserts that Cavicchio breached his "fiduciary duties of loyalty and care to Kiehl and to Soundtrack under NY Partnership Law Section 43 and other applicable law" (id., 98) or, alternatively, under the laws governing joint venture agreements. The complaint seeks at least $35 million damages, including those due to disgorgements of all real estate profits and proceeds. The second cause of action seeks a declaratory judgment that states the alleged Soundtrack partnership is dissolved under Partnership Law § 62, that defendants must wind up the partnership's affairs, that defendants must provide Kiehl with a complete accounting, and that defendants must pay Kiehl his share of all the business' assets and income. The third cause of action, as an alternative, alleges that Cavicchio breached the parties' joint venture agreement. The fourth cause of action, also set forth as alternative relief, seeks the accounting that Kiehl demanded in a September 21, 2020, letter. Cavicchio refused to provide this accounting. The complaint asserts that Kiehl is entitled to this relief under Partnership Law §§ 43, 44, and 73. As the fifth cause of action, the complaint asks that the court assess the value of Soundtrack and its assets, places Kiehl's purported share in a constructive trust, and declares that Kiehl is a 50% owner of Soundtrack and its assets, including the real estate that Soundtrack purportedly owns.
Alternatively, in the sixth cause of action, the complaint states that if no partnership or joint venture existed, Soundtrack has been unjustly enriched by his services and contributions, and that Kiehl is entitled to a money judgment as compensation. The seventh, and final, cause of action states that Cavicchio "has received and continues to retain all of the profits of Soundtrack and all of the value of the Soundtrack Real Estate, a portion of which is money belonging to [Kiehl]" (id., 141), and that "Cavicchio should not be permitted to keep the money" (id., 143). As relief, the complaint also seeks experts' fees and reasonable attorney's fees.
Motion Sequence 001
In motion sequence 001, defendants move, pre-answer, under CPLR § 3211 (a) (7), to dismiss the complaint. They argue that the complaint does not set forth the four elements necessary for a partnership — the sharing of profits and losses; joint control and management by the partners; the parties' contributions of financial support, expertise, or effort; and the intention that a partnership exists (NYSCEF Doc. No. 10, *8 [citing Kidz Cloz, Inc. v Officially For Kids, Inc., 320 F Supp 2d 164, 171 (SD NY 2004)]).[FN2]
They also argue that a joint venture does not [*4]exist because Kiehl cannot show that (1) he and Cavicchio entered into "a specific agreement to carry on an enterprise for profit"; (2) they intended to be joint venturers; (3) they each contributed property, financing, skill, knowledge, or effort to Soundtrack; (4) they exercised some degree of joint control over the venture; and (5) they shared in both profits and losses (NYSCEF Doc. No. 10, *8 [quoting Itel Containers Intl. Corp. v Atlanttrafik Exp. Serv. Ltd., 909 F2d 698, 701 (2d Cir 1990)] [reviewing evidence and determining there was not a joint venture]).[FN3]
Thus, they contend that the complaint does not state a viable cause of action.
According to defendants, plaintiff has not set forth a prima facie case as to these elements. They contend that because the complaint also does not allege that Kiehl and Cavicchio shared access to the company bank accounts or that Kiehl filed partnership tax returns, it does not state a viable claim (citing Scott v Rosenthal, 2001 WL 282712, *3, 2000 US Dist LEXIS 23608 [SD NY March 28, 2001, No. 97 CIV 2143 (LLS)] [evaluating evidence submitted in opposition to defendant's summary judgment motion]). They set forth numerous other factual allegations that, according to defendants, had to be in the complaint to survive CPLR § 3211 (a) (7) dismissal.
Most significantly, defendants state that a relationship that provides for the division of profits does not result in a partnership unless the parties also share in their losses. Defendants emphasize that this is a critical element of both a partnership and a joint venture (citing, inter alia, Chanler v Roberts, 200 AD2d 489, 491 [1st Dept 1994]). Here, defendants argue, Kiehl's own allegations show that he did not participate in Soundtrack's losses. They point out that the $350,000 to which the complaint refers was for the creation of Partners Leasing, the independent entity that both purchased Soundtrack's own recording equipment and purchased and leased additional equipment (citing NYSCEF Doc. No. 1,85-86). They assert that the partnership agreements for Partners Leasing I, II, and IV also support their claim (NYSCEF Doc. Nos. 16-18).[FN4]
They contrast the operation of Soundtrack with two companies in which Kiehl was a partner and a full or partial owner, k.ink, inc. and Partners Leasing, respectively.
Defendants next argue that documentary evidence, when considered along with the statements in the complaint, proves that Cavicchio viewed Kiehl as an employee of Soundtrack, rather than part of a partnership or a joint venture (CPLR § 3211 [a] [1]). As alleged proof of Kiehl's status at Soundtrack, defendants submit redacted copies of plaintiff's W-2 forms from 2015-2019, which list Kiehl as the "employee" of Soundtrack and defendant Cav Corp.[FN5]
as the [*5]"employer" (NYSCEF Doc. No. 13). They contrast this with Kiehl's partnership in Partners Leasing I, II, and IV (NYSCEF Doc. Nos. 16-18). Defendants allege that, among other things, Kiehl made financial contributions to these three entities and received K-1 tax forms, rather than W-2s. They do not submit documentary evidence in support of this contention.
In addition, defendants state that the contrast between Kiehl's involvement in Partners Leasing and his involvement in Soundtrack further shows that he was neither a partner nor part of a joint venture in Soundtrack. They state that, as plaintiff acknowledges, he did not receive a fifty percent share of the profits from Soundtrack. Defendants submit a printout that purportedly establishes that, instead, Kiehl received annual commissions of four-to-eight percent based on the company's profits between 1982 and 1998 (NYSCEF Doc. No. 14). According to defendants, Kiehl's acknowledgement that this is the amount he received annually, along with his acceptance of the alleged commissions without objection, is incompatible with Kiehl's position that he is a fifty percent owner.
Also under CPLR § 3211 (a) (1), defendants state the court must reject Kiehl's claim that he has a partnership interest in the real estate that Soundtrack uses. They emphasize that the complaint does not allege that Kiehl signed the deeds to these properties, was involved in their purchases, or bore any financial responsibility for their mortgages or guarantees. As documentary support on the issue of ownership, defendants submit a quitclaim deed to the Boston Property, which was issued to Cavicchio and Cosmo L. Taglino in their capacities as trustees of Appel Realty Trust (NYSCEF Doc. No. 19). They submit a copy of the mortgage issued to Cavicchio and Taglino (id.). They provide copies of the deed and mortgage to the Flatiron Property, both of which were issued to Cavicchio (NYSCEF Doc. Nos. 20, 21). Defendants provide a copy of the mortgage for the West 22nd Street property, which lists Salcam Realty LLC as the mortgagee and that the mortgage date was October 5, 2000, rather than the 2005 date set forth in the complaint (see NYSCEF Doc. No. 22).[FN6]

Defendants state that Cavicchio acquired five separate office condominiums at 936 Broadway, not one 15,000-square-foot purchase of the entire fourth floor of the building. In support, defendants submit copies of the five mortgages and/or the documents of sale: the April 24, 1987 assignment of unit 403 from Cavicchio to Cav. Corp., together with supporting documentation relating to the unit and other properties (NYSCEF Doc. No. 23); a purchase agreement with Cavicchio for unit 402 from October 19, 1990 (NYSCEF Doc. No. 24); an office unit deed dated May 29, 1993, between 936 Broadway Partners and Cavicchio and Taglino in their capacity as trustees of the Appel Realty Trust (NYSCEF Doc. No. 25); an office unit deed for unit 303 in the building, to Cavicchio and Taglino as trustees for Pretty Kitty Realty Trust (NYSCEF Doc. No. 26); and a bargain and sale deed for unit 302 to Stanley Paws, LLC, which allegedly belongs to Cavicchio (NYSCEF Doc. No. 27).[FN7]
They contend that these documents [*6]refute plaintiff's allegation that defendants improperly transferred the real estate assets from Soundtrack to these other individuals and companies.[FN8]

Additionally, defendants argue that Kiehl's claim to an interest in Soundtrack is barred by the statute of limitations. According to defendants, because the partnership agreement allegedly began around forty years ago, plaintiff had six years to assert a breach of contract challenge (citing CPLR § 213 [2]; Barber v. Fox, 36 Mass App Ct 525, 529 [Mass App Ct 1994]). Defendant further argues that Kiehl's claim to an interest in the real estate purchases are barred by the statute of frauds, which they allege applies to an oral agreement to transfer land from one joint venturer to another (citing Backus Plywood Corp v Commercial Decal, Inc. (317 F2d 339, 341-342 [2d Cir 1963]).
Next, defendants contend that this court must reject plaintiff's claims for recovery under an unjust enrichment theory (sixth cause of action) and one for money had and received (seventh cause of action). Specifically, they argue that Kiehl received both a salary and commissions for his services, and he has not alleged that this was an inequitable arrangement (citing, inter alia, Georgia Malone & Co., Inc. v Rieder, 19 NY3d 511, 516 [2012]). Defendants also argue that Kiehl does not allege a sufficiently close relationship with any of the trusts to allege that they are liable under an unjust enrichment theory. A cause of action for money had and received requires a similar showing and, therefore, defendants argue that it also should be dismissed (citing, inter alia, Cohen v BMW Invs. L.P., 144 F Supp 3d 492, 501 [SD NY 2015], affd 668 Fed Appx 373 [2d Cir 2016]).
Finally, defendants argue that this court lacks jurisdiction over defendants Soundtrack Boston, Cavicchio Family Massachusetts LLC, and Cavicchio's Children Trust. They point out that all three of these defendants are incorporated in Massachusetts. In support of their position that the court does not have long-arm jurisdiction under CPLR § 302, they submit the affidavit of Paul Cavicchio, who is controller of defendant Soundtrack Boston, a co-trustee of Cavicchio Children's Trust, and "familiar with the operations of Cavicchio Family Massachusetts LLC" (NYSCEF Doc. No. 11, 2). Paul Cavicchio alleges that Soundtrack Boston does not conduct business in New York, and it is separate from Soundtrack New York, which has a distinct set of books and records. The other two defendants, he states, also do not conduct business in New York and they do not have property, offices, or other indicia of ownership of a business there. Thus, there is not an aggregate of activities in New York "such that it may be said to be present in the State not occasionally or casually, but with a fair measure of permanence and continuity" (quoting Laufer v Ostrow, 55 NY2d 305, 310 [1982] [internal quotation marks and citation omitted]). They contend that the complaint does not allege any facts supporting a contrary conclusion. Further, they state that plaintiff has not shown a basis for specific jurisdiction, as he [*7]has not alleged "suit-related conduct [that] create[s] a substantial connection with the forum State" (quoting Walden v Fiore, 571 US 277, 284 [2014]). They state that the allegation that Cavicchio improperly transferred business assets from Soundtrack Boston to Cavicchio Family Massachusetts and Cavicchio Children's Trust is insufficient. Further, they contend that Cavicchio's domicile in New York does not permit this court to exercise jurisdiction over the family trusts (citing Hanson v Denckla, 357 US 235, 253 [1958]).
In opposition, Kiehl first argues that Cavicchio has conceded that he and Kiehl are partners. In part, he relies on what he asserts is his personally typed transcript of a conversation that he secretly recorded on December 20, 2019 (NYSCEF Doc. No. 41).[FN9]
He introduces the transcript with an affidavit which states that "[o]n Friday, December 20, 2019, I met in person with . . . Cavicchio at the New York offices of Soundtrack Group . . . where we had a conversation lasting approximately eleven and a half minutes. I recorded the entire conversation" and reduced it to "a true and accurate transcription of the entire recording" (NYSCEF Doc. No. 42,2, 3). According to the alleged transcription, Cavicchio stated that if he sold the company, Kiehl would receive four or five percent of the profit. Kiehl suggested he was entitled to half of the profits, but Cavicchio stood by his position. When Kiehl stated that Cavicchio told him "'We can be partners as long as I make all the decisions," Cavicchio allegedly responded that he "didn't say equal partners. We are partners, and you're getting . . . you're getting compensated on what I consider to be the right amount of money" (NYSCEF Doc. No. 41, *3). Cavicchio explained that he believed four percent of the profits and a weekly salary was equitable. Cavicchio also indicated that he made no representation that they would sell the business and cash out as multimillionaires, as Kiehl maintained. Instead, Cavicchio reiterated his position, and noted that Kiehl already received his share of the profits annually. In addition, Cavicchio suggested that neither of them had viewed Kiehl as an owner of the business. In support, he reminded Kiehl that, early on, Kiehl even had contemplated leaving Soundtrack and going to California. Kiehl had the flexibility to leave, the intimation was, because he was not an owner of the business. In addition, when Kiehl suggested that the business was worth $75 million because of the value of the real estate, Cavicchio stated that Kiehl did not have any interest in the real property.
In addition, Kiehl annexes the affidavit of Tony Prendatt, who has been a client of Soundtrack for more than 36 years (NYSCEF Doc. No. 42). Prendatt states that Cavicchio introduced Kiehl to him as "Cavicchio's 'co-founder and partner'" (id., 4). This occurred, he specifies, in 1985 at Soundtrack's offices, and during over the 25 ensuing years, Prendatt understood Kiehl and Cavicchio to be partners. Further, Prendatt asserts that Cavicchio consistently referred to Kiehl as his partner over the years. In Prendatt's conversations with Cavicchio, he states, he has referred to Kiehl as Cavicchio's partner, and Cavicchio never corrected him. He believes that "Soundtrack's phenomenal growth through the mid-2000s could not have occurred without John Kiehl" (id., 13).
Plaintiff also argues that the complaint adequately alleges that Kiehl shared in the losses [*8]of Soundtrack. He contends that his contribution to Partners Leasing "directly benefited Soundtrack" by buying equipment that Soundtrack otherwise would have had to lease (NYSCEF Doc. No. 39, *12). Further, he alleges that he gave up half of his $100,000 compensation for two years and that he personally paid other expenses for Soundtrack. This is sufficient to show a joint venture, he argues (NYSCEF Doc. No. 39, *13 [citing, e.g., Babani v Royal Chain, Inc., 2020 NY Slip Op 32468 (U) (Sup Ct, NY County 2020)]). Kiehl argues that because Soundtrack has not suffered great losses and has generated around $10 million in gross revenue annually, there was "no reasonable expectation that there would be any losses," and thus the lack of an express agreement to share in losses does not establish that there is not a joint venture (NYSCEF Doc. No. 39, *14 [quoting Dundes v Fuersich, 13 Misc 3d 1223 (A), 2006 NY Slip Op 51962 (U), *10 (Sup Ct, NY County 2006) (internal quotation marks and citation omitted)]).
Citing Don v Singer, 2011 NY Slip Op 31993 [U], *15 [Sup Ct, NY County 2011]), plaintiff notes that "a joint venture does not require an equal sharing of profits and losses" (NYSCEF Doc. No. 39, *13). Moreover, plaintiff argues, "the intent of the parties to share the profits and losses may be expressed or implied from the facts" (id. [quoting Don, 2011 NY Slip Op 31993 (U), *15]). Kiehl states that although his initial contributions were not financial, his skill, knowledge, and work helped foster Soundtrack's incredible growth.
In addition, Kiehl alleges that it is not dispositive that he received a W-2 form rather than a K-1 form for tax purposes (NYSCEF Doc. No. 39, *14 [citing Zito v Fischbein Badillo Wagner Harding, 11 Misc 3d 713, (Sup Ct, NY County 2006)]). Kiehl rejects defendants' contention that his failure to receive fifty percent of Soundtrack's profits meant that he was not a partner, contending that he and Cavicchio drew equal shares of the profits annually. Moreover, he claims, the fact that he received an annual share of the profits constitutes prima facie evidence of his partnership status (NYSCEF Doc. No. 39, *15 [citing Dundes, 13 Misc 3d 1223 [A], 2006 NY Slip Op 51962 (U), **9-10]).
Next, Kiehl states that defendants' legal arguments lack merit. He argues that there is no statute of limitations bar because his receipt of a share of the profits was consistent with the alleged partnership agreement. Kiehl states that his dispute did not arise until he announced his retirement, terminated the alleged partnership or joint venture, and asked for an accounting. He states that a fiduciary duty exists under joint venture principals (NYSCEF Doc. No. 39, *16 [quoting Philips Intl. Inv., LLC v Pektor, 2012 NY Slip Op 33493 (U), *8 (Sup Ct, NY County 2012)]). According to Kiehl, the statute of frauds does not bar his claim to an interest in the real estate Soundtrack uses because the property was acquired with partnership funds, and therefore it belongs to the partnership (NYSCEF Doc. No. 39, *18 [citing Partnership Law § 12]). He contends that the parties' alleged joint venture agreement — which includes the agreement to acquire real property — is not subject to the statute of frauds (NYSCEF Doc. No. 39, *18 [citing Retter v Zyskind, 138 AD3d 496, 496 [1st Dept 2016]). He contends that because Cavicchio allegedly used Soundtrack's money to buy the real estate, the property is an asset of Soundtrack. Plaintiff states that defendants' allegations to the contrary merely create factual issues improper for resolution under CPLR § 3211. According to plaintiff, his unjust enrichment and money had and received causes of action also withstand defendants' challenges because he has not been fully compensated for his work, and because Cavicchio transferred partnership assets that belonged, in part, to Kiehl.
In addition, plaintiff contends that his complaint and his current affidavits collectively show that there is jurisdiction over the Boston-based defendants. He submits a copy of the [*9]affidavit of Joshua C. Gillette, an attorney at his counsel's law firm (NYSCEF Doc. No. 43). Gillette provides a copy of a discovery demand that plaintiff served on defendants, asking for documents related to the jurisdictional question (NYSCEF Doc. No. 44). In response to plaintiff's demand, Gillette alleges, defendants only provided a single document, "Employee Listing."[FN10]
Gillette further submits a copy of a letter from defendants' counsel which acknowledges that the New York and Boston employees use the same email system and that Soundtrack's hard copy documents from both New York and Boston are stored in Boston (NYSCEF Doc. No. 45). Plaintiff also submits a copy of Soundtrack Boston's LinkedIn page, which states that Soundtrack "maintains a full[-] time staff of over 45 talented people, runs 16 studios/stages and roughly 27,000 square feet of space in our Boston and New York locations" (NYSCEF Doc. No. 46). Kiehl argues that this information is sufficient to establish jurisdiction over the Boston entities. If the court decides this is insufficient, however, Kiehl argues that he should be allowed to conduct discovery on this issue. In support, Kiehl relies on Marcal Fin. SA v Sutton (70 Misc 3d 1204 [A], 2020 NY Slip Op 51576 [U] [Sup Ct, NY County 2020], modified on other grounds sub nom Marcal Fin. SA v Middlegate Sec. Ltd., 203 AD3d 467 [1st Dept 2022]), in which the court found that the intimate relationships between the entities justified additional discovery.
In reply, defendants state that, even considering the opposition papers and additional submissions, Kiehl has not pled facts sufficient to show that Kiehl shared in Soundtrack's losses and made capital contributions to the business. Defendants reiterate that Kiehl's investment in Partners Leasing does not constitute either a contribution to Soundtrack or a financial loss. They reject plaintiff's position that an agreement to share losses is not essential if there is not a reasonable expectation that there will be losses. They contend that even if this court relies on Dundes (13 Misc 3d 1223 [A], 2006 NY Slip Op 51962 [U]), which plaintiff cites for this point, it must reject the argument because in the case at hand profitability was not assured.
Also, defendants urge the court to reject Kiehl's argument that his decades-long devotion to Soundtrack is evidence of his agreement to share in its losses. Specifically, they contend that this would enable any dedicated long-term employee to claim to be a partner. Citing Crest Const. Co. v Insurance Co. of N.A. (417 F Supp 564, 569-570 [WD Oklahoma 1976]), they argue that where an individual stands "to lose nothing by a failure of the enterprise except a share of the net profits," a partnership does not exist (NYSCEF Doc. No. 48, *4).
Next, defendants state that neither plaintiff's complaint nor his current opposition papers show that the parties intended to create a partnership or a joint venture. They state the complaint does not allege that the traditional indicia of partnerships existed. Specifically, they note that the complaint does not state that there was joint liability for debts, that the parties both had access to Soundtrack's bank accounts, that plaintiff had the authority to sign checks on behalf of Soundtrack, or that plaintiff filed partnership tax returns (id., *4 [citing Scott v Rosenthal, 2001 WL 282712, 2000 US Dist LEXIS 23608, *9-10 (SD NY 2001)]). Defendants argue that the complaint's mischaracterizations of the real estate transactions, which were purchased by entities other than Soundtrack, underscores that plaintiff was uninvolved in and unaware of Soundtrack's business dealings. They allege that plaintiff's business, k.ink, was an independent contractor, and [*10]that Kiehl himself was an employee rather than a partner in the business. Defendants also reiterate that there was no joint management or control of Soundtrack. To the contrary, they state that plaintiff's admissions show that he lacked any control over the company (NYSCEF Doc. No. 48, *6-7 [citing, e.g., Slabakis v Schik, 164 AD3d 454, 455 (1st Dept 2018)]). According to defendants, Cavicchio allegedly used the term "partner" informally when he referred to Kiehl, but this did not suffice to create a partnership (NYSCEF Doc. No. 48, *7 [citing, e.g., Ergowerx Intl., LLC v Maxell Corp. of America, 18 F Supp 3d 430, 452 [SD NY 2014]).
In addition, defendants reiterate their other arguments. They state that the action is time-barred, as plaintiff should have commenced the action when he received W-2 forms and commissions. They claim that the statute of frauds bars plaintiff from arguing that defendants purchased the real estate properties using partnership funds, and that they have established that Soundtrack did not purchase the properties in question. Further, with respect to the real estate purchases, defendants claim that Massachusetts rather than New York partnership laws apply. They reiterate their positions that New York lacks jurisdiction over the Massachusetts entities and that no discovery is necessary on this issue.
As stated, in motion sequence 003, plaintiff moves for an order disallowing the use of the alleged transcript of the conversation between Kiehl and Cavicchio. However, an affidavit that introduces a complete recording of the parties' discussion is sufficient to establish a prima facie case as to its authenticity (see Muhlhahn v Goldman, 93 AD3d 418, 418-419 [1st Dept 2021], citing Lipton v New York City Tr. Auth., 11 AD3d 201, 201-202 [1st Dept 2004]). Alternatively, the transcript of a recording that is certified by an authority such as a court reporter may be considered (see Spar & Berstein, P.C. v Reliable Financing Serv., Ltd., 2009 WL 9155498, *2 [SDNY March 6, 2009, No. 115332/2007]). Though neither of these scenarios apply, plaintiff has certified that the transcription is accurate. Although later, defendants may seek a copy of the recording, for the purposes of this motion the transcription is sufficient. Thus, this prong of defendants' argument fails.
Alternatively, defendants note that plaintiff himself transcribed the tape, which purportedly represents his complete conversation with Cavicchio. They suggest that the transcript may have been altered — specifically, because the transcript includes ellipses which suggest that language was eliminated from the transcription, and because it contains errors which suggest that certain language was misquoted. However, defendants' contentions relate to the accuracy and credibility of the document, and these matters are not ripe for review.
Defendants also argue that the tape is excludable as a settlement document. As is relevant here, CPLR § 4547 provides that 
"[e]vidence of (a) furnishing, or offering or promising to furnish, or (b) accepting, or offering or promising to accept, any valuable consideration in compromising or attempting to compromise a claim . . . shall be inadmissible as proof of liability for or invalidity of the claim or the amount of damages. Evidence of any conduct or statement made during compromise negotiations shall also be inadmissible."
Citing to the transcript, defendants note that plaintiff initiated the conversation, stated that he had hired a lawyer, and that the parties were continuing an earlier discussion about the issue in which Kiehl purportedly threatened to shut down Soundtrack. They also contend that Cavicchio "rejected" Kiehl's "demands" for half the company and a 50% interest in Soundtrack and in the property in Boston (NYSCEF Doc. No. 50, *2 [citing NYSCEF Doc. No. 41]). Thus, they argue [*11]that the conversation was a settlement negotiation (NYSCEF Doc. No. 50, *3 [citing Soumayah v Minnelli, 41 AD3d 390, 393 (1st Dept 2007)]).
The court concludes that, as plaintiff alleges, the conversation at issue was not a settlement negotiation. The transcript instead shows that Kiehl waited for Cavicchio in Soundtrack New York's offices and tried to get him to concede that Kiehl was an equal owner of the business. Cavicchio denied that the two were equal partners and, more than once, attempted to end the conversation. He also denied that Soundtrack owned the real property to which Kiehl had referred. Although there was some discussion about issues that relate to the merits of plaintiff's subsequent lawsuit, at no point did Kiehl articulate anything like a settlement demand. Further, at no point did Cavicchio offer to resolve the parties' dispute. To the contrary, around a third of the way through the discussion he reiterated that he needed to go and that "[h]owever you want to proceed is up to you" (NYSCEF Doc. No. 41, *3 [at 4:42]). Defendants are correct that Kiehl referred to his lawyers, but he indicated that they were "helping me with my financial planning" and made no mention or threat of litigation (id., *1 [at 0:19]).
Soumayah, on which defendants rely, is distinguishable because there, the plaintiff apparently told the defendant that he planned to sue her and, in response, the defendant "asked plaintiff how much money he wanted not to initiate suit" (41 AD3d at 393). The defendant allegedly declined the offer. The First Department found that the defendant had made an offer to compromise and thus the allegations relating to the parties' conversation were inadmissible under CPLR § 4547 (id. at 393). Here, on the other hand, there were no such discussions. Defendants' attempt to characterize Cavicchio's rejection of Kiehl's contentions as the rejection of a settlement offer is not persuasive.
The court also finds that the Prendatt affidavit can be considered. Defendants argue that Prendatt has no personal knowledge of the nature of the business relationship Kiehl and Cavicchio established. As plaintiff indicates, Prendatt personally observed the business starting in 1985, not at the inception of the alleged partnership, and he only attested to his personal observations. At oral argument when the parties addressed this issue, the court stated that Prendatt did not have to have personal knowledge of the parties' business dealings for his affidavit to be admissible:
"[They] could discuss what was occurring in 1985, that gave them the belief that what they saw was a partnership. It may not be satisfactory; it may not be sufficient to prove that a partnership . . . existed . . ., but with respect to what they were able to observe, they could testify to what they saw in 1985 and say that this, Your Honor, is the reason I believe this was a partnership" (NYSCEF Doc. No. 56 [Transcript of Oral Argument], p 24 lines 16-24).
Defendants did not present any persuasive countervailing arguments.
Motion Sequence 001
Now, the court turns to defendants' pre-answer motion to dismiss. As threshold issues, defendants allege that there is no jurisdiction over the defendants Soundtrack Boston, LLC d/b/a Soundtrack Group, Cavicchio Family Massachusetts, and Cavicchio Children Trust. The court agrees that plaintiff has not shown that there is jurisdiction over Cavicchio Family Massachusetts and Cavicchio Children Trust. The fact that the two entities own real estate that Soundtrack uses [*12]is an insufficient basis for jurisdiction. Plaintiff's position that these trusts are intertwined with Soundtrack is conclusory. Plaintiff relies solely on his argument is that these trusts hold property that belongs to Soundtrack; in the complaint, the allegation is that Cavicchio transferred the property from Soundtrack to the trusts, while in his opposition plaintiff contends that the properties were purchased using Soundtrack's money. At present, however, he has not set forth a basis for either of these positions — the former of which, moreover, contradicts the documentary evidence defendants submitted to show that Soundtrack never owned the property in question.
However, an issue of fact exists as to whether this court has jurisdiction over Soundtrack Boston, LLC. Plaintiff adequately alleges that Soundtrack Boston and Soundtrack New York share or shared a physical storage space, among other things (NYSCEF Doc. No. 45), and that Cavicchio regularly acted in New York on behalf of Soundtrack Boston. In addition, plaintiff points to Soundtrack Boston's Linkedin page, in which the Boston facility states that it has spaces in both Boston and New York (NYSCEF Doc. No. 46) and holds the two corporations out as part of Soundtrack. "Where, as here, the plaintiff opposes a motion to dismiss the complaint . . . . on the ground that discovery on the issue of personal jurisdiction is necessary, the plaintiff need not make a prima facie showing of jurisdiction, but instead need only demonstrate that facts may exist to exercise personal jurisdiction over the defendant" (Serota v Cooper, 216 AD3d 1019, 1020-1021 [2d Dept 2023] [internal quotation marks and citation omitted]; compare with Moris Med., Inc. v Siev, 214 AD3d 540, 541 [1st Dept 2023] ["vague and unsubstantiated assertions that defendant did business on plaintiff's behalf in New York at unspecified times with unnamed employees and customers" were insufficient to warrant discovery]). Therefore, the court denies this prong of the motion, with leave to renew after there is discovery on the issue.
Next, the court turns to defendants' challenges to the substance of the complaint. Under CPLR 3211 (a) (7), for failure to state a claim, "the court must give the pleading a liberal construction, accept the facts alleged in the complaint to be true and afford the plaintiff 'the benefit of every possible favorable inference'" (J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 21 NY3d 324, 334 [2013] [JP Morgan] [quoting AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 5 NY3d 582, 591 (2005)]). A court does not consider whether the plaintiff will succeed in the litigation (see Landon v Kroll Lab. Specialists, Inc., 22 NY3d 1, 6 [2013]). Under CPLR 3211 (a) (1), for dismissal based on documentary evidence, the evidence in question must conclusively refute the allegations in the complaint (JP Morgan, 21 NY3d at 334).
After careful consideration, the court dismisses the first through fifth causes of action, which rely on the alleged partnership or joint venture agreement (see Velez v Mitchell, 211 AD3d 415, 416 [1st Dept 2022]). Although plaintiff is correct that his receipt of a W-2 and other factors are not dispositive under CPLR 3211 (a) (7) or (a) (1), he has not satisfied an indispensable element of his claim. To determine whether there is a valid oral partnership agreement, "a court will consider . . . whether the parties shared profits and losses and the existence of capital contribution" (Moses v Savedoff, 96 AD3d 466, 470 [1st Dept 2012]; see Sullivan v Lawlis, 93 Mass App Ct 409, 413-414 [Mass App Ct 2018] [under Massachusetts law]). A joint venture agreement, which plaintiff pleads in the alternative, also requires that the venturers share losses (see Lebedev v Blavatnik, 193 AD3d 175, 185 [1st Dept 2021]; Dakin v OSI Restaurant Partners, LLC, 100 Mass App Ct 92, 100 [Mass App Ct 2021] [applying Massachusetts law]).
Although the complaint at hand asserts that plaintiff shared in Soundtrack's losses, it supports this contention by detailing personal expenditures that do not constitute losses. The [*13]$350,000 to which the complaint refers, for example, was for his partnership in Partners Leasing. Although Partners Leasing did business with Soundtrack, it was a separate entity. The allegation that Soundtrack saved money by doing business with Partners Leasing is insufficient to turn plaintiff's expenditure into a business loss (see NYSCEF Doc. No. 56 [oral argument transcript], p 29 lines 8-10). His deferral of half of his $100,000 salary for a time is not a loss, as he ultimately received the money that was owed to him. Finally, the statement that plaintiff paid "other expenses of the business" over the years is conclusory and insufficient to establish a business loss. Plaintiff also provides no legal argument supporting his position that this is equivalent to sharing in Soundtrack's losses.
Plaintiff is correct that a joint venture agreement does not require losses "where the record . . . establishes that there was no reasonable expectation of losses" (Lebedev, 193 AD3d at 185 [internal quotation marks and citation omitted]). Here, however, Soundtrack's profitability was not guaranteed. Indeed, by plaintiff's own admission, he deferred half of his salary for almost two years when the business experienced "cash flow problems" (NYSCEF Doc. No. 1, 90). Thus, plaintiff cannot avail himself of this limited exception to the general principle.
However, defendant has not established its right to dismissal of the sixth cause of action, for unjust enrichment. "[U]njust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties" (Georgia Malone & Co., Inc. v Rieder, 19 NY3d 511, 516 [2012] [Georgia Malone] [internal quotation marks and citations omitted]). The claim must allege that the defendants were enriched at the plaintiff's expense, and that equity and good conscience mandate that the defendants cannot retain what the plaintiff seeks to recover (id.; see Columbia Mem. Hosp. v Hinds, 38 NY3d 253, 275 [2022] [stating that issues of equity and good conscience are "essential"]). Further, for the claim to succeed, the relationship between the two parties must be "sufficiently close" (Georgia Malone, 19 NY3d at 516).
Here, the complaint alleges a forty-year relationship between Kiehl and Cavicchio, an unwritten understanding that plaintiff always would receive a share of the Soundtrack's profits. Also, it alleges that Kiehl relied on the parties' relationship of trust and their purported agreement, on Cavicchio's public and private references to him as his "partner," and his continued receipt of 4% share of the profits, devoting his time and resources to the business until his retirement. In light of his efforts and of defendants' allegedly implicit promises, the complaint adequately states that cause of action (see Rios v Sendowski, 203 AD3d 588, 588 [1st Dept 2022]).
Defendants' arguments to the contrary are unpersuasive. They contend that Kiehl's receipt of a salary plus commission for 43 years is equitable. This raises an issue of fact, which is not ripe for consideration at this juncture. Any arguments as to the extent of Kiehl's interest — whether he is entitled to half of the value of the partnership or a lesser amount, and what percentage share of the profits he should receive, if any — also are premature.
In support of its contention that this court should dismiss the seventh cause of action, for money had and received, defendants point out that the elements of the claim — that the defendant received money that belonged to the plaintiff, that the money benefitted the defendant, and that equity and good conscience mandate that defendant deliver the funds to the plaintiff — are similar to the elements of a claim for unjust enrichment (NYSCEF Doc. No. 10, citing Cohen v BMW Inv. L.P., 144 F Supp 3d 492, 501 [SDNY 2015], affd 668 Fed Appx 373 [2d Cir 2016]). Defendants do not raise any independent arguments in support of their request for dismissal of [*14]this claim. Defendants merely contend that dismissal of the cause of action for money had and received is appropriate because it is similar to the unjust enrichment claim, which allegedly lacks merit. For the same reasons that the court denied dismissal of the unjust enrichment claim, therefore, the court also denies this prong of the motion.
The court has considered all the parties' remaining arguments and finds them unpersuasive. For the reasons set forth above, it is hereby
ORDERED that motion sequence number 003 is denied; and it is further
ORDERED that motion sequence number 001 is granted to the extent that Cavicchio Family Massachusetts LLC and Cavicchio Children Trust are dismissed from the action; and it is further
ORDERED that the caption is amended so as to remove any reference to Cavicchio Family Massachusetts LLC and Cavicchio Children Trust, and the New York County Motion Support and Trial Support offices are directed to amend the caption accordingly; and it is further
ORDERED that the portion of motion sequence 001 seeking dismissal of the complaint as against Soundtrack Boston, LLC d/b/a Soundtrack Group is denied; and it is further
ORDERED that the portion of motion sequence 001 seeking dismissal of the first through fifth causes of action is granted, and these causes of action are hereby severed and dismissed; and it is further
ORDERED that the portion of motion sequence 001 seeking dismissal of the sixth and seventh causes of action is denied, and those causes of action shall continue; and it is further
ORDERED that defendants have 30 days from the date of this order to serve and file their answers to the complaint; and it is further
ORDERED that the parties shall appear for a virtual preliminary conference on September 26, 2023 at 10:30 a.m.
DATE 07/12/2023
ROBERT R. REED, J.S.C.

Footnotes

Footnote 1:Defendants contest the characterizations in this paragraph and instead claim that Soundtrack itself was not the purchaser. For the purposes of this section of the discussion, the court merely sets forth the allegations in the complaint.

Footnote 2:Defendants argue that there is no jurisdiction over those defendants that do not conduct business in New York. They cite Boyer v Bowles (310 Mass 134 [1941]), noting that the elements of a partnership are similar in Massachusetts.
Footnote 3:Defendants additionally cite cases such as Mendelsohn v Leather Mfg. Corp. (326 Mass 226, 233 [1950]), to show that, in Massachusetts, a joint venture and a partnership are similar.
Footnote 4:McGrail was a signatory to Partners Leasing I Agreement, signed on March 8, 1995, and she shared equally in the costs and profits (NYSCEF Doc. No. 16). She was not part of the second agreement, signed in June 21, 1996 (NYSCEF Doc. No. 17). However, an amendment to the Partners Leasing II agreement stated that McGrail and Pamela Camarda each held a one-sixth share of the equity and profits (id., *3). In July 2005, Kiehl sold 63% of his interest in Partners II to Cavicchio for $47,359.82 and retained the rest (id., *4).
Footnote 5:Cavicchio and members of his family own and run Cav Corp.
Footnote 6:The memorandum of law states that Salcam is "a realty trust named after Cavicchio's children" (NYSCEF Doc. No. 10, *11), but the court cannot locate any evidentiary or other support for this sentence. Counsel's comment in the memorandum is not sufficient to establish this assertion.
Footnote 7:The document does not identify Cavicchio or any other party, and the court does not see any other submission that establishes his ownership of this company.
Footnote 8:Defendants alternatively argue that if a partnership or joint venture existed, then Cavicchio had the right to terminate it at will under Partnership Law § 62 (1) (b). This argument lacks merit. Defendants' reliance on the 1926 case, Bayer v Bayer (215 AD 454 [1st Dept 1926]), is misplaced. There, the partnership allegedly was dissolved at a meeting on June 11, 1919, and the language on which defendants rely is dicta. Also, the question of whether there was an oral partnership which Cavicchio terminated on notice to Kiehl is a factual question, not proper for resolution on a CPLR § 3211 motion absent unequivocal documentary evidence.
Footnote 9:The court notes that defendants object to the use of the transcription, but it includes this document and the affidavit of Tony Prendatt, to which defendants also object, for the purpose of the analysis that follows.
Footnote 10:This document does not appear to be part of the motion file for this case.